Philip Gordon, ISBN 1996
Bruce S. Bistline, ISBN 1988
GORDON LAW OFFICES
623 W. Hays St.
Boise, Idaho 83702
Telephone: (208) 345-7100
Fax: (208) 345-0050
Email: pgordon@gordonlawoffices.com
Email: bbistline@gordonlawoffices.com

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
Phillip Kim, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827
email:  lrosen@rosenlegal.com
email:  pkim@rosenlegal.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LANCE TEAGUE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> vs. <br><br> ALTERNATE ENERGY HOLDINGS, INC., DONALD L. GILLISPIE, AND JENNIFER RANSOM, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.:

**CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS**

**<u>JURY TRIAL DEMANDED</u>**

1

Plaintiff Lance Teague, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges for this Complaint the following upon knowledge, with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, *inter alia*, (a) review and analysis of relevant filings made by Alternate Energy Holdings, Inc. ("Alternate Energy" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Defendants' public documents, conference calls and press releases; (c) review and analysis of securities analysts' reports and advisories about the Company; and (d) information readily obtainable on the internet. Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

## NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of himself and all other persons or entities (the "Class") who purchased the securities of Alternate Energy during the time period between September 20, 2006 through December 14, 2010, inclusive (the "Class Period"), and who were damaged thereby. Plaintiff seeks to recover damages caused by Defendants' violation of Sections 10(b) and Rule 10b-5 thereunder, and Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

2.      According to their public filings with the Securities Exchange Commission ("SEC"), Alternate Energy purports to be operate in the electric power generation industry by acquiring and developing nuclear plant sites and obtaining licenses for their construction and operation throughout the United States, specifically Idaho.

3.      Throughout the Class Period, which begins with the Company's incorporation in September 2006, Alternate Energy and certain of its officers and directors engaged in a scheme to manipulate and artificially inflate the market price of Alternate Energy stock by (1) paying stock promoters to creating artificial demand in the marketplace through end of day stock purchases, (2) misrepresenting that Company's officers and directors never sold any shares of the Company's stock; and (3) misrepresenting the Company's true financial condition and potential business prospects.

4.      More specifically, defendant Donald L. Gillispie ("Gillispie") engaged in a scheme by which he hired stock promoters and issued press releases in order to artificially inflate the value of the Company's stock. He never disclosed these activities to the public. Indeed, the Company issued a number of public statements assuring the investing public that Gillispie had not sold any of his shares of the Company. In reality Gillispie sold more than a million shares of the Company during the Class Period, and thereby collected considerable monies by virtue of his fraudulent scheme.

5.      On September 7 and September 30, 2010, the Company issued press releases stating that no officer or director of the Company, *since its inception*, had sold any of his or her shares of the Company.

6.      These statements were patently false as defendant Jennifer Ransom ("Ransom"), Alternate Energy's Secretary and Senior Vice-President of Administration had sold one million shares of the Company between June and September 2010 at the behest of defendant Gillispie.

7.      It was not until December 16, 2010, when the SEC instituted a civil action against Alternate Energy and defendants Gillispie and Ransom, that any reasonable investor or class member could have reasonably suspected that the Company's statements with respect to Gillispie's stock positions were false and misleading. Nor could have investors reasonably suspected that the

Company and certain of its officers and directors were engaging in a scheme to artificially inflate the Company's stock price.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

10.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Defendant maintains its principal executive offices in this District and many of the acts and transactions alleged herein, including the preparation and dissemination of statements containing materially false and misleading information and omissions of material fact, occurred in substantial part in this District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of a national securities exchange.

## PARTIES

12.     Plaintiff Lance Teague, as set forth in the accompanying certification, incorporated by reference herein, purchased Alternate Energy Stock at artificially inflated prices during the Class Period and has been damaged thereby.

13.     Defendant Alternate Energy is a Nevada corporation headquartered in Eagle, Idaho. Since 2007, the Company's principal executive offices were located at 345 911 E. Winding Creek Dr., Suite 150, Eagle, Idaho. Prior to that, the Company was based out of defendant Gillispie's home in Virginia. Alternate Energy's stock was listed on the OTC Bulletin Board and on the Pink Sheets operated by OTC Markets, Inc. (ticker symbols: AEHI.BB and AEHI.PK, respectively).

14.     Defendant Donald L. Gillispie ("Gillispie") was President, CEO, and Chairman of AEHI since the Company went public in September 2006.

15.     Defendant Jennifer Ransom was Secretary and Senior Vice-President of Administration of the Company since at least 2008.

16.     Gillispie and Ransom are collectively referred to herein as the "Individual Defendants."

17.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company;

(f)      was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

(g)      approved or ratified these statements in violation of the federal securities laws.

18.      Alternate Energy is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

19.      The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Alternate Energy under *respondeat superior* and agency principles.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

20.      Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased securities of Alternate Energy during the Class Period and who were damaged thereby.  Excluded from the Class are Defendants, the current and former officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

21.      The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Alternate Energy's securities were actively traded on the OTC Bulletin Board and the Pink Sheets operated by OTC Markets, Inc.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed

6

Class.  Members of the Class may be identified from records maintained by Alternate Energy or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

22.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

23.     Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

24.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, prospects, sales, operations and management of Alternate Energy; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

25.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

26.     The Class Period begins on September 20, 2006 when the Company went public through a reverse merger with Nussentials Holdings, Inc.  From at least that time, and possibly earlier, defendant Gillispie engaged in a scheme by which he utilized stock promoters to manipulate Alternate Energy's stock price.

27.     In particular, in exchange for Alternate Energy stock,  Gillispie ordered these promoters to buy the Company's stock at the end of certain trading days so as to artificially inflate the stock's price and trading volume.

28.     When, in 2009, Gillispie grew frustrated with said promoters because of their purported failure to sufficiently manipulate the price of Alternate Energy common stock, he instructed them to purchase ever larger quantities of the Company's stock. Gillispie also instantiated incentive awards, such as offering larger quantities of stock to the promoters if they reached certain price targets.

29.     Gillispie also utilized misleading press releases to complement the fraudulent scheme described above.

30.     On September 7, 2010, AEHI issued a press release claiming that "Based on confidence in AEHI's accomplishments and long term potential, company directors and line officers have maintained their stock ownership, in which no shares have been sold since company inception." On September 30, 2010, an AEHI press release quoted Gillispie as stating: "Recent insider purchases and the fact that neither I, our CFO, board members, nor any officers who have day-to-day line

8

responsibilities for running the company have sold a single share since the Company's inception speak to our strong confidence in the outlook for the business."

31.    By way of his fraudulent scheme and misleading press releases, Gillispie was able to artificially inflate the value of Alternate Energy stock from around $.18 per share in April 2010 to around $.74 per share in September 2010.

32.    Said press releases, however, were patently false because defendant Ransom, a Senior Vice-President of the Company, sold one million share of Alternate Energy between June and September 2010.

33.    Ransom sold said shares at the instruction of Gillispie. Gillispie also sold an additional 137,000 shares through Brian Webb ("Webb"), an attorney for Alternate Energy. Gillispie, Ransom, and Webb all had brokerage accounts located at the same firm and used the same broker. Gillispie instructed the broker to sell stock for Ransom and Webb, including how and when to execute the trades.

34.    As a result, the Company's statements indicating that no officer or director of the Company had ever sold his or her shares of the Company were misleading and/or false because Gillispie used Ransom and Webb as his nominees for stock sales, and thereby *did* sell his shares of the Company.

35.    In addition, the Company failed to notify shareholders of the fact that Gillispie's salary for 2010 increased by more than $640,000 from the previous year.

36.    Furthermore, On October 14, 2010, Alternate Energy issued a press release announcing that *Pinnacle Digest* "vetted" and "recommended" Alternate Energy stock. The release

stated that "Pinnacle Digest was not paid or compensated by Alternate Energy in any way for writing the article."

37.     The October 14, 2010 press release was false and/or misleading because *Pinnacle Digest's* website clearly indicates that it has been paid by Alternate Energy to display and distribute the Company's news.

38.     On December 16, 2010, the SEC filed a civil action (10-CV-00621-EJL) against, among others, Alternate Energy and the Individual Defendants for violations of the federal securities laws. The complaint in said action made factual allegations similar and/or identical to those described above.

39.     Prior to filing said complaint, on December 14, 2010, the SEC issued an order to temporarily suspend trading of the company's common stock. The suspension was effective at 9:30 a.m. EST on December 14, 2010. As a result, Plaintiff and the Class have been damaged.

## LOSS CAUSATION AND DAMAGES

40.     The market for Alternate Energy's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Alternate Energy's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Alternate Energy securities relying upon the integrity of the market price of Alternate Energy securities and market information relating to Alternate Energy, and have been damaged thereby.

41.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Alternate Energy's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set

forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

42.   At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Alternate Energy's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Alternate Energy and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

### Applicability of Presumption of Reliance:
### Fraud-On-The-Market Doctrine

43.   At all relevant times, the market for Alternate Energy common stock was an efficient market for the following reasons, among others.

(a)   Alternate Energy stock met the requirements for listing, and was listed and actively traded on the OTC Bulletin Board, an efficient and automated market;

11

(b)      During the Class Period, on average, hundreds of thousands of shares of Alternate Energy stock were traded on a weekly basis, demonstrating a very active and broad market for Alternate Energy stock and permitting a very strong presumption of an efficient market;

(c)      As a regulated issuer, Alternate Energy filed periodic public reports with the SEC;

(d)      Alternate Energy regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)      Alternate Energy was followed by securities analysts who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms;

(f)      Numerous NASD/FINRA member firms were active market-makers in Alternate Energy stock at all times during the Class Period; and

(g)      Unexpected material news about Alternate Energy was reflected and incorporated into the Company's stock price during the Class Period.

44.      As a result of the foregoing, the market for Alternate Energy's common stock promptly digested current information regarding Alternate Energy from all publicly available sources and reflected such information in Alternate Energy's stock price.  Under these circumstances, all purchasers of Alternate Energy common stock during the Class Period suffered similar injury through their purchase of Alternate Energy's common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

45.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Alternate Energy who knew that those statements were false when made.

### FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

46.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell Alternate Energy's securities at artificially inflated and

distorted prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, individually and as a group, took the actions set forth herein.

48.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers and/or sellers of the Company's securities in an effort to maintain artificially high market prices for Alternate Energy's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

49.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Alternate Energy as specified herein.

50.     These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Alternate Energy's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Alternate Energy and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that

14

operated as a fraud and deceit upon the purchasers and/or seller of Alternate Energy securities during the Class Period.

51.     Each of the Individual Defendants' primary liability, and controlling person liability, arise from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his or her responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; (4) each of these Defendants was aware of the Company's dissemination of information to the investing public that he knew or recklessly disregarded to be materially false and misleading; and (5) each of these Defendants culpably participated in the wrongful conduct alleged herein.

52.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Alternate Energy's operating condition and future business prospects from the investing public and supporting the artificially inflated or distorted price of its securities.  As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition and business prospects throughout the Class Period, Defendants, if they did not have actual

knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

53.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Alternate Energy securities was artificially inflated or distorted during the Class Period.  In ignorance of the fact that market prices of Alternate Energy's publicly-traded securities were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the Company's securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired and/or sold Alternate Energy securities during the Class Period at artificially high and/or distorted prices and were or will be damaged thereby.

54.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Alternate Energy's financial results, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired or sold their Alternate Energy securities, or, if they had acquired or sold such securities during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

55.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

56.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

57.     This action was filed within two years of discovery of the fraud and within five years of Plaintiff' purchases of securities giving rise to the cause of action.

## SECOND CLAIM

### Violation of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

58.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.     This second claim is asserted against defendants Gillispie and Ransom.

60.     The Individual Defendants acted as controlling persons of Alternate Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

61.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

62.     As set forth above, Alternate Energy and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

63.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

64.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)  Determining that this action is a proper class action and certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure, and Plaintiff's counsel as Class Counsel;

(b)  Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

18

(d)  Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 20, 2010                **GORDON LAW OFFICES**

                         _____/s/ Philip Gordon_____

Philip Gordon, ISBN 1996
Bruce S. Bistline, ISBN 1988
623 W. Hays St.
Boise, Idaho 83702
Telephone: (208) 345-7100
Fax: (208) 345-0050

-and-

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827

Counsel for Plaintiff