GORDON LAW OFFICES
Philip Howard Gordon
pgordon@gordonlawoffices.com
623 W Hays
Boise, ID 83702-5512
Telephone: (208) 345-7100
Facsimile: (208) 345-0050

*[Proposed] Liaison Counsel for the Class*

RIGRODSKY & LONG, P.A.
Seth D. Rigrodsky
sdr@rigrodskylong.com
Timothy J. MacFall
tjm@rigrodskylong.com
Scott J. Farrell
sjf@rigrodskylong.com
585 Stewart Avenue, Suite 304
Garden City, NY 11530
Telephone: (516) 683-3516
Facsimile:  (302) 654-7530

*[Proposed] Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LANCE TEAGUE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) Civil Action No. 1:10-cv-00634-BLW ) ) <u>CLASS ACTION</u> ) |
| Plaintiff, | ) **DECLARATION OF TIMOTHY J.** ) **MACFALL IN SUPPORT OF THE** |
| v. | ) **MOTION OF ALAN GINSBERG** ) **AND DAVID STINNETT FOR** |
| ALTERNATE ENERGY HOLDINGS, INC., DONALD L. GILLESPIE, AND JENNIFER RANSOM, | ) **APPOINTMENT OF LEAD** ) **PLAINTIFFS AND APPROVAL OF** ) **SELECTION OF COUNSEL** ) |
| Defendants. | ) |

I, TIMOTHY J. MACFALL, hereby declare that:

1.  I am a member of the law firm Rigrodsky & Long, P.A., counsel for movants

Alan Ginsberg and David Stinnett ("Movants"). I respectfully submit this declaration in support of Movants' Motion for Appointment of Lead Plaintiffs and for Approval of Selection of Counsel in the above-captioned action.

2.     Attached hereto as Exhibit A is a true and correct copy of the press release dated January 7, 2011.

3.     Attached hereto as Exhibit B is a true and correct copy of the Joint Declaration in Support of the Motion of Alan Ginsberg and David Stinnett for Appointment of Lead Plaintiffs and Approval of Selection of Counsel.

4.     Attached hereto as Exhibit C is a true and correct copy of the Certifications of Alan Ginsberg and David Stinnett.

5.     Attached hereto as Exhibit D is a true and correct copy of the loss charts detailing the losses of Alan Ginsberg and David Stinnett.

6.     Attached hereto as Exhibit E is a true and correct copy of the firm resume of Rigrodsky & Long, P.A.

7.     Attached hereto as Exhibit F is a true and correct copy of the firm resume of the Gordon Law Firm.

I declare under the penalty of perjury that the foregoing is true to the best of my knowledge.

Dated: March 7, 2011

2

# EXHIBIT A

Make Y! Your Homepage

**YAHOO!** FINANCE

     E✱TRADE     

# INVESTOR NOTICE: The Rosen Law Firm Files Class Action on Behalf of Alternate Energy Holdings, Inc. Shareholders -- AEHI

GlobeNewswire

Press Release Source: The Rosen Law Firm PA PC On Friday January 7, 2011, 10:23 pm EST

NEW YORK, Jan. 7, 2011 (GLOBE NEWSWIRE) -- The Rosen Law Firm, P.A. today announced that it has filed a class action lawsuit on behalf of investors who purchased common stock of Alternate Energy Holdings, Inc. ("Alternate Energy" or the "Company") (OTCQB:AEHI) during the period between September 20, 2006 through December 14, 2010, inclusive (the "Class Period").

To join the Alternate Energy class action, visit the firm's website at http://www.rosenlegal.com, or call Laurence Rosen, Esq. or Phillip Kim, Esq., toll-free, at 866-767-3653; you may also e-mail lrosen@rosenlegal.com or pkim@rosenlegal.com for information on the class action.

NO CLASS HAS YET BEEN CERTIFIED IN THE ABOVE ACTION. UNTIL A CLASS IS CERTIFIED, YOU ARE NOT REPRESENTED BY COUNSEL UNLESS YOU RETAIN ONE. YOU MAY CHOOSE TO DO NOTHING AT THIS POINT AND REMAIN AN ABSENT CLASS MEMBER.

The Complaint alleges that Alternate Energy and certain of its officers and directors misrepresented the Company's business condition, manipulated its stock price, and concealed secret profits that were reaped by the Company's CEO, Donald L. Gillispie ("Gillispie"), and its Senior Vice President of Administration, Jennifer Ransom ("Ransom").

In particular, the Complaint asserts that Gillispie, with the aid of Ransom, engaged in a scheme to manipulate and artificially inflate the market price of Alternate Energy stock by (1) paying stock promoters to create artificial demand in the marketplace through end of day stock purchases; (2) misrepresenting that the Company's officers and directors never sold any shares of the Company's stock; and (3) misrepresenting the Company's true financial condition and potential business prospects. On December 16, 2010, the United States Securities & Exchange Commission ("SEC") filed a lawsuit against Alternate Energy, Gillispie, and Ransom. Two days prior, on December 14, 2010, the SEC issued an order temporarily suspending trading of the Company's common stock. As a result of the alleged fraud, Alternate Energy's shareholders have been damaged.

If you wish to serve as lead plaintiff, you must move the Court no later than March 8, 2011. If you wish to join the litigation, or to discuss your rights or interests regarding this class action, please contact Laurence Rosen, Esq. or Phillip Kim, Esq. of The Rosen Law Firm, toll-free, at 866 -767-3653, or via e-mail at lrosen@rosenlegal.com or pkim@rosenlegal.com. The class action is pending in the U.S. District Court for the District of Idaho.

The Rosen Law Firm represents investors throughout the globe, concentrating its practice in securities class actions and shareholder derivative litigation.

---

**Contact:**

```
Laurence Rosen, Esq.
Phillip Kim, Esq.
The Rosen Law Firm, P.A.
275 Madison Avenue, 34th Floor
New York, New York 10016
Tel: (212) 686-1060
Weekends Tel: (917) 797-4425
Toll Free: 1-866-767-3653
Fax: (212) 202-3827
lrosen@rosenlegal.com
pkim@rosenlegal.com
www.rosenlegal.com
```

**Follow Yahoo! Finance on    Twitter; become a fan on    Facebook.**

# EXHIBIT B

GORDON LAW OFFICES
Philip Howard Gordon
pgordon@gordonlawoffices.com
623 W Hays
Boise, ID 83702-5512
Telephone: (208) 345-7100
Facsimile: (208) 345-0050

*[Proposed] Liaison Counsel for the Class*

RIGRODSKY & LONG, P.A.
Seth D. Rigrodsky
sdr@rigrodskylong.com
Timothy J. MacFall
tjm@rigrodskylong.com
Scott J. Farrell
sjf@rigrodskylong.com
585 Stewart Avenue, Suite 304
Garden City, NY 11530
Telephone: (516) 683-3516
Facsimile:  (302) 654-7530

*[Proposed] Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| LANCE TEAGUE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) ) | Civil Action No. 1:10-cv-00634-BLW <br><br> <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | **JOINT DECLARATION IN SUPPORT OF THE MOTION OF** |
| v. | ) ) | **ALAN GINSBERG AND DAVID STINNETT FOR APPOINTMENT** |
| ALTERNATE ENERGY HOLDINGS, INC., DONALD L. GILLESPIE, AND JENNIFER RANSOM, | ) ) ) | **OF LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF COUNSEL** |
| Defendants. | ) ) | |

The undersigned, under penalties of perjury under the laws of the United States of America, declare as follows:

1.  We respectfully submit this Joint Declaration in support of the motion of Alan Ginsberg and David Stinnett for appointment as Lead Plaintiffs in the above-referenced action and approval of their selection of Lead and Liaison Counsel (the "Motion"). We each have personal knowledge about the information in this Joint Declaration.

2.  I, Alan Ginsberg, am a retired acupuncturist and a resident of Florida. As evidenced in my certification and loss chart attached to the Motion as Exhibits B and C, I have suffered estimated losses in my transactions in Alternate Energy Holding, Inc. ("AEHI") securities of approximately $79,534.87.

3.  I, David Stinnett, am a retired Professor of Electronics and Automation and a resident of Texas. As evidenced in my certification and loss chart attached to the Motion as Exhibits B and C, I have suffered estimated losses in my transactions in AEHI $11,775.00.

4.  After reviewing a complaint against AEHI and the Individual Defendants, and before the Motion was filed on our behalf, we decided to move together as a two-member group for appointment as Lead Plaintiff in this securities class action and to propose as Lead Counsel for the Class the law firm of Rigrodsky & Long, P.A. ("Rigrodsky & Long") and to propose as Liaison Counsel for the Class the law firm of Gordon Law Offices.

5.  We believe that the Court should appoint us as Lead Plaintiffs because we are sophisticated individual investors with a significant interest in the outcome of the litigation and we have the capability and competency to oversee this litigation to a successful conclusion. We did not purchase our shares of AEHI stock at the direction of counsel.

6.     We are capable of actively participating in this action and are committed to doing so in part by working closely with our Lead Counsel to obtain the best possible recovery for the Class in an efficient manner.

7.     Before deciding to move for Lead Plaintiffs, we carefully considered the merits of this action and our respective losses.  We reviewed a filed complaint and we discussed the merits of the case and our losses with our counsel.

8.     We understand that one of the primary responsibilities of the Lead Plaintiffs in overseeing the work of lead counsel is to ensure that the litigation is handled efficiently, and that the resulting fees and expenses are fair and reasonable, relative to the size, complexity, and risk of the litigation.

9.     We understand that each of us could have chosen to pursue individual actions, make a motion for appointment as Lead Plaintiff individually, or could have taken no action and remained absent class members.   However, based on our respective financial losses and desire to actively oversee this litigation, we affirmatively decided that it would be a benefit to ourselves and the Class we seek to represent if we, together, as two sophisticated investors, sought appointment as cohesive Lead Plaintiff group.

10.     We are committed to the zealous prosecution of this case and will remain actively involved in it, including through our attendance at deposition and trial, if necessary.

11.     We understand that if appointed we each would owe a fiduciary duty to all members of the putative class to provide fair and adequate representation and to work with class counsel to obtain the largest possible recovery for the putative class consistent with good faith and vigorous advocacy.

12.     We each have knowledge of the requirements and responsibilities of a Lead Plaintiff in a securities class action.  We have agreed to exercise joint decision making and to work together if appointed in this action to fairly and adequately protect the interests of the Class.  If appointed as Lead Plaintiffs, we will maintain regular

3

contact with our counsel and with each other in order to discuss and monitor the litigation as it progresses. We have selected Lead Counsel in this action based upon their experience and resources, and we are confident in our ability to work with our counsel to protect the interest of the Class.

13.     We understand that, as the Lead Plaintiffs in this action, we are subject to the jurisdiction of the Court and will be bound by all rulings by the Court, including rulings regarding any judgments.

14.     As Lead Plaintiffs, we shall be responsible for directing the activities of our selected counsel for the duration of the litigation, who shall:

a.     determine and present the position of the Lead Plaintiffs on all matters that may arise during litigation of the action:

b.     coordinate the initiation of and conduct discovery on behalf of Plaintiffs consistent with the requirements of Fed. R. Civ. P. 26, including the preparation of joint interrogatories and requests for production of documents and the examination of witnesses in depositions;

c.     conduct settlement negotiations under our direction on behalf of Plaintiffs;

d.     negotiate and enter into those stipulations with opposing counsel necessary for the conduct of the litigation;

e.     retain expert consultants and witnesses;

f.     prepare and distribute periodic status reports to the Lead Plaintiffs;

g.     maintain adequate time and disbursement records covering services as Lead Counsel; and

h.     perform such other duties as may be incidental to the proper and efficient coordination of the litigation or which may be authorized by further order of the Court.

15.   On March 7, 2011, we participated in a conference call with counsel where the respective responsibilities of counsel and lead plaintiffs were discussed. In addition, a system for determining how decisions would be determined by the group should any disagreement amongst the group was adopted. Contact information has been exchanged to allow for the communication amongst proposed lead plaintiffs absent the presence of counsel.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 3|8|2011 _____        _____

Alan Ginsberg

Date: _____        _____

David Stinnett

5

        g.      maintain adequate time and disbursement records covering services as Lead Counsel; and

        h.      perform such other duties as may be incidental to the proper and efficient coordination of the litigation or which may be authorized by further order of the Court.

15.     On March 7, 2011, we participated in a conference call with counsel where the respective responsibilities of counsel and lead plaintiffs were discussed. In addition, a system for determining how decisions would be determined by the group should any disagreement amongst the group was adopted. Contact information has been exchanged to allow for the communication amongst proposed lead plaintiffs absent the presence of counsel.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date:_____        _____

                              Alan Ginsberg

Date:_3/8/11_        _____

                              David Stinnett

# EXHIBIT C

## CERTIFICATION OF PLAINTIFF
### PURSUANT TO THE FEDERAL SECURITIES LAWS

I, _Alan Ginsberg_ ("Plaintiff"), hereby declare as to the following claims asserted under the federal securities laws that:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or to participate in this action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition or trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in Alternate Energy Holdings, Inc. (OTCQB: AEHI) securities that are the subject of this action:

| No. of Shares | Stock Symbol | Buy/Sell | Transaction Date | Price Per Share |
|---|---|---|---|---|
| | | | | |
| | See attached report | | | |
| | | | | |
| | | | | |

*Please list additional transactions on separate sheet of paper, if necessary.*

5.     Plaintiff will actively monitor and vigorously pursue this action for the Class' benefit.

6.     Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification: ___N|A___ .

7.    Plaintiff will not accept any payment for serving as a representative party on behalf of the Class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as the Court orders or approves.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this _28_ day of _Jan_____, 2011.

_____
Signature

_____
Print Name

2

| Date | Transaction Type | Quantity | Price Per Share |
|---|---|---|---|
| 7/27/2010 | Purchase | 15,000 | $0.67 |
| 8/11/2010 | Purchase | 10,000 | $0.78 |
| 8/31/2010 | Purchase | 5,000 | $0.60 |
| 9/1/2010 | Purchase | 4,900 | $0.62 |
| 9/1/2010 | Purchase | 10,000 | $0.60 |
| 9/22/2010 | Purchase | 4,900 | $0.80 |
| 9/24/2010 | Purchase | 4,900 | $0.82 |
| 9/28/2010 | Purchase | 4,900 | $0.84 |
| 10/4/2010 | Purchase | 4,900 | $0.82 |
| 10/5/2010 | Purchase | 1,000 | $0.79 |
| 10/5/2010 | Purchase | 3,000 | $0.78 |
| 10/8/2010 | Purchase | 1,350 | $0.77 |
| 10/14/2010 | Purchase | 5,000 | $0.67 |
| 10/18/2010 | Purchase | 4,900 | $0.72 |
| 10/28/2010 | Purchase | 6,000 | $0.74 |
| 11/2/2010 | Purchase | 987 | $0.66 |
| 11/2/2010 | Purchase | 9,013 | $0.65 |
| 11/9/2010 | Purchase | 500 | $0.55 |
| 11/9/2010 | Purchase | 2,500 | $0.56 |
| 11/9/2010 | Purchase | 2,000 | $0.56 |
| 11/15/2010 | Purchase | 5,000 | $0.52 |
| 11/22/2010 | Purchase | 20,000 | $0.63 |
| 12/1/2010 | Purchase | 10,000 | $0.65 |
| 12/2/2010 | Purchase | 10,000 | $0.63 |

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO THE FEDERAL SECURITIES LAWS

I, _____ ("Plaintiff"), hereby declare as to the following claims asserted under the federal securities laws that:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or to participate in this action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition or trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in Alternate Energy Holdings, Inc. (OTCQB: AEHI) securities that are the subject of this action:

| No. of Shares | Stock Symbol | Buy/Sell | Transaction Date | Price Per Share |
|---|---|---|---|---|
| 15,000 | AEHI | | 11/01/2010 | .70 |
| 7500 | AEHI | | 11/08/2010 | .56 |
| | | | | |
| | | | | |

*Please list additional transactions on separate sheet of paper, if necessary.*

5.    Plaintiff will actively monitor and vigorously pursue this action for the Class' benefit.

6.    Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification: _A_A_O_N_S_____.

7.    Plaintiff will not accept any payment for serving as a representative party on behalf of he Class beyond Plaintiff's pro rata share of any recovery, except such reasonable c sts and expenses (including lost wages) directly relating to the representation of the Class as the Court orders or approves.

I declare under the penalty of perjury that the foregoing is true and correct.

Execu ed this /9 day of ___Jan___, 2011.

_____
Signature

DAVID STINNELL

Print Name

2

# EXHIBIT D

## Schedule of Losses

**Alternate Energy Holdings, Inc.  (OTCQB: AEHI)**
**Class Period:  9/20/2006 – 12/14/2010**

**David Stinnett:**

| Date | Transaction Type | Quantity | Price Per Share | (Cost)/Proceeds |
|------|------------------|----------|-----------------|-----------------|
| 11/1/2010 | Purchase | 15,000 | $0.70 | ($10,500.00) |
| 11/8/2010 | Purchase | 7,500 | $0.56 | ($4,200.00) |
| | | | | |
| | | 22,500 | $0.13* | $2,925.00 |
| | | | | |
| **TOTAL\*\*** | | | | **($11,775.00)** |

*90-Day Post Class Period average price (12/15/2010 – 2/7/2010) = $0.13.

\*\* LIFO and FIFO calculations yield the identical losses.

**Schedule of Losses**

**Alternate Energy Holdings, Inc. (OTCQB: AEHI)**
**Class Period: 9/20/2006 - 12/14/2010**

**Alan Ginsberg:**

| Date | Transaction Type | Quantity | Price Per Share | (Cost)/Proceeds |
|------|------------------|----------|-----------------|-----------------|
| 7/27/2010 | Purchase | 15,000 | $0.67 | ($10,050.00) |
| 8/11/2010 | Purchase | 10,000 | $0.78 | ($7,800.00) |
| 8/31/2010 | Purchase | 5,000 | $0.60 | ($3,000.00) |
| 9/1/2010 | Purchase | 4,900 | $0.62 | ($3,038.00) |
| 9/1/2010 | Purchase | 10,000 | $0.60 | ($6,000.00) |
| 9/22/2010 | Purchase | 4,900 | $0.80 | ($3,920.00) |
| 9/24/2010 | Purchase | 4,900 | $0.82 | ($4,018.00) |
| 9/28/2010 | Purchase | 4,900 | $0.84 | ($4,116.00) |
| 10/4/2010 | Purchase | 4,900 | $0.82 | ($4,018.00) |
| 10/5/2010 | Purchase | 1,000 | $0.79 | ($790.00) |
| 10/5/2010 | Purchase | 3,000 | $0.78 | ($2,340.00) |
| 10/8/2010 | Purchase | 1,350 | $0.77 | ($1,039.50) |
| 10/14/2010 | Purchase | 5,000 | $0.67 | ($3,350.00) |
| 10/18/2010 | Purchase | 4,900 | $0.72 | ($3,258.00) |
| 10/28/2010 | Purchase | 6,000 | $0.74 | ($4,440.00) |
| 11/2/2010 | Purchase | 987 | $0.66 | ($651.42) |
| 11/2/2010 | Purchase | 9,013 | $0.65 | ($5,858.45) |
| 11/9/2010 | Purchase | 500 | $0.55 | ($275.00) |
| 11/9/2010 | Purchase | 2,500 | $0.56 | ($1,400.00) |
| 11/9/2010 | Purchase | 2,000 | $0.56 | ($1,120.00) |
| 11/15/2010 | Purchase | 5,000 | $0.52 | ($2,600.00) |
| 11/22/2010 | Purchase | 20,000 | $0.63 | ($12,600.00) |
| 12/1/2010 | Purchase | 10,000 | $0.65 | ($6,500.00) |
| 12/2/2010 | Purchase | 10,000 | $0.63 | ($6,300.00) |
|  |  |  |  |  |
|  |  | 145,750 | $0.13* | $18,947.50 |
|  |  |  |  |  |
| **TOTAL**\*\* |  |  |  | **($79,534.87)** |

\*90-Day Post Class Period average price (12/15/2010 – 2/7/2010) = $0.13.

\*\* LIFO and FIFO calculations yield the identical losses.

# EXHIBIT E

# RIGRODSKY & LONG, P.A.

Attorneys at Law                                                    www.rigrodskylong.com

Seth D. Rigrodsky
Admitted in DE, NY

Brian D. Long
Admitted in DE, PA

Timothy J. MacFall
Admitted in NY

Marc A. Rigrodsky
Admitted in CT, DC

Scott J. Farrell
Admitted in NJ, NY

Gina M. Serra
Admitted in DE, NJ, PA

## FIRM RÉSUMÉ

### THE FIRM

Rigrodsky & Long, P.A. (the "Firm"), is a law firm that focuses on the representation of institutional and individual investors and consumers in class action and shareholder derivative litigation involving securities laws, corporate law, the Employees Retirement Income Security Act ("ERISA"), the Fair Labor Standards Act ("FLSA"), and consumer fraud statutes. The Firm's offices are located in Delaware and New York. The Firm regularly practices before state and federal courts located throughout the United States. The Firm's attorneys have decades of experience litigating complex corporate and class action lawsuits.

Our mission is to provide legal services of the highest quality through the dedicated efforts of a team of highly skilled professionals and support staff working together and drawing upon significant expertise and experience. As discussed below in the "Select Firm Accomplishments" section, during just five years of its existence, the Firm has achieved precedent-setting victories for thousands of victims of corporate wrongdoing.

### THE FIRM'S PROFESSIONALS

*Seth D. Rigrodsky,* a shareholder in the Firm, has over nineteen years of legal experience. Mr. Rigrodsky is a *magna cum laude* graduate of both Brandeis University and the Georgetown University Law Center. While at Georgetown, he served as Articles Editor of the *Georgetown Law Review.* Mr. Rigrodsky began his legal career as a law clerk to the Honorable Andrew G.T. Moore, II, of the Delaware Supreme Court. Following his clerkship, Mr. Rigrodsky was associated with the law firms of Wachtell, Lipton, Rosen & Katz in New York City, and Morris, Nichols, Arsht & Tunnell in Wilmington, Delaware, where he concentrated his practice on corporate and complex business litigation. In 1994, Mr. Rigrodsky joined Morris and Morris in Wilmington, Delaware, where he became a partner beginning in January 2000, and represented investors in numerous federal and state class and shareholder lawsuits. Mr. Rigrodsky joined the law firm Milberg LLP in 2001 and founded its Delaware office. Mr. Rigrodsky is a member of the bars of the States of Delaware and New York, the United

919 North Market Street, Suite 980
Wilmington, Delaware 19801
T 302.295.5310

585 Stewart Avenue, Suite 304
Garden City, New York 11530
T 516.683.3516

States District Courts for Delaware and the Southern District of New York, and the United States Courts of Appeals for the Second, Third, and Fourth Circuits.

Among the significant cases in which Mr. Rigrodsky participated at Morris and Morris are: *Orman v. America Online, Inc.*, Civ. Action No. 97-264-A (E.D. Va.) ($35 million settlement of class securities fraud litigation); *In re Merrill Lynch Sec. Litig.*, Civ. Action No. 94-5343 (DRD) (D.N.J.) (Nasdaq Market Makers securities fraud litigation); *In re Columbia Gas Sec. Litig.*, Cons. Civ. Action No. 91-357 (D. Del.) ($36.5 million settlement of class securities fraud litigation); *Schaffer v. Nat'l Medical Enterprises, Inc.*, Civ. Action No. 93-5224 TJH (BX) (C.D. Cal.) ($11,650,000 settlement of class securities fraud litigation). Among other things, while at Milberg Weiss, Mr. Rigrodsky was one of the plaintiffs' lead trial counsel in *In re The Walt Disney Company Derivative Litigation*, Consol. C.A. No. 15452 (Del. Ch. 2005), a 37-day trial involving allegations that the Walt Disney Company's directors breached their fiduciary duties in connection with the hiring and firing of Michael Ovitz, and the payment a package of benefits that was worth approximately $140 million. Also, while at Milberg, Mr. Rigrodsky did extensive work on the following securities class action litigations: *In re Deutsche Telekom AG Sec. Litig.*, No. 00 Civ. 9475 (SHS) (S.D.N.Y.) ($120 million settlement of securities class action litigation); and *In re Charter Comm., Inc. Sec. Litig.*, MDL Docket No. 1506 (CAS) ($146,250,000 settlement of securities class action litigation).

Since co-founding the Firm in 2006, Mr. Rigrodsky has served as co-chair of the plaintiffs' Executive Committee in *In re Lear Corp. S'holders Litig.*, Cons. C.A. No. 2728-VCS (Del. Ch.), in which plaintiffs successfully obtained a preliminary injunction enjoining a shareholder vote on a proposed merger pending the issuance of remedial and supplemental disclosures. Mr. Rigrodsky also served a Co-Lead Counsel for plaintiffs in *In re The Topps Co., Inc. S'holders Litig.*, Cons. C.A. No. 2786-VCS. After Mr. Rigrodsky made the argument for plaintiffs, the Delaware Court of Chancery issued a landmark decision granting plaintiffs' injunction motion. 926 A.2d 58 (Del. Ch. 2007). The Court enjoined the merger vote until after Topps granted the competing bidder The Upper Deck Company ("Upper Deck") a waiver of the standstill agreement to make a tender offer, and allowed Upper Deck to communicate with Topps' stockholders about its bid and its version of events. Among significant securities fraud class action cases Mr. Rigrodsky participated in at the Firm include: *In re MBNA Corp. Securities Litigation*, C.A. No. 05-272 (GMS) (D. Del) and *In re Molson Coors Brewing Co. Securities Litigation*, Consol. C.A. No. 05- 294 (GMS) (D.Del.). In the *MBNA* litigation, Mr. Rigrodsky represented institutional plaintiffs Activest Investmentgesellschaft mbH's and Société Générale Securities Services Kapitalanlagegesellschaft mbH and assisted in securing a $25 million fund for the benefit of MBNA Corporation shareholders. In the *Molson Coors* matter, Mr. Rigrodsky assisted in securing a $6 million settlement fund on behalf of plaintiffs Metzler

Investment GmbH Drywall Acoustic Lathing and Insulation Local 675 Pension Fund, and the other shareholders of Molson Coors Brewing Co.

*Brian D. Long,* a shareholder in the Firm, has over eleven years of experience representing plaintiffs in complex class action litigation in state and federal courts throughout the nation. Mr. Long is a graduate of Franklin & Marshall College in Lancaster, Pennsylvania, and of the Duquesne University School of Law in Pittsburgh, Pennsylvania. Upon graduation from law school, Mr. Long was associated with the firm of Roda & Nast, P.C., also in Lancaster, where he litigated mass tort, consumer fraud, and antitrust class action litigation. After three years at Roda & Nast, Mr. Long moved to the Wilmington, Delaware office of Chimicles & Tikellis, LLP. While at the Chimicles firm, Mr. Long focused his practice on litigating both transactional and shareholder derivative cases in the Delaware Court of Chancery. In addition to litigating that firm's proprietary cases, Mr. Long also gained valuable experience serving as local counsel to out-of-town firms. In March of 2005, Mr. Long moved to the Wilmington office of Milberg LLP, where he represented both institutional and individual investors in complex corporate litigation. Mr. Long became a shareholder of the Firm upon its founding in August 2006. Mr. Long is admitted to practice before the bars of the State of Delaware and the Commonwealth of Pennsylvania. He also is admitted to practice in the United States Court of Appeals for the Third Circuit and the United States District Courts for the Eastern and Western Districts of Pennsylvania and the District of Delaware.

Among the significant cases in which Mr. Long recently has participated are *In re MBNA Corp. Securities Litigation,* C.A. No. 05-272 (GMS) (D. Del.) and *In re Molson Coors Brewing Co. Securities Litigation,* Consol. C.A. No. 05- 294 (GMS) (D. Del.) Mr. Long also has experience assisting in the representation of securities fraud plaintiffs in collateral proceedings in the United States Bankruptcy Court for the District of Delaware.

*Timothy J. MacFall* has more than twenty five years of legal experience. Mr. MacFall is a *cum laude* graduate of Brooklyn College of the City University of New York and a graduate of Brooklyn Law School. Upon his graduation from law school, Mr. MacFall served as an Assistant District Attorney in the Narcotics Bureau of the Kings County District Attorney's Office. In 1987, he joined the Immigration & Naturalization Service as a Trial Attorney in the Alien Criminal Apprehension Program. Mr. MacFall was subsequently cross-designated as a Special Assistant United States Attorney for the Eastern District of New York, Criminal Division. In 1988, Mr. MacFall was appointed as a Special Assistant United States Attorney in the Civil Division of the United States Attorney's Office for the Southern District of New York. As a government attorney, Mr. MacFall tried numerous cases to verdict and argued more than a dozen cases before the

United States Court of Appeals for the Second Circuit. Mr. MacFall has focused his practice primarily on complex class action litigation in state and federal courts since 1992, when he became associated with the firm Harwood Feffer. Mr. MacFall was subsequently associated with the Law Offices of Curtis V. Trinko, LLP, where he became a partner in 1994. In 2000, Mr. MacFall became of counsel to Bernstein Liebhard LLP. He became a partner at Bernstein Liebhard LLP in 2005, representing individual investors, union pension funds, and state pension funds in transactional and federal securities class actions. Mr. MacFall joined Rigrodsky & Long, P.A. in April 2009. Mr. MacFall is a member of the bar of the State of New York and is also admitted to practice in the United States District Courts for the Southern and Eastern Districts of New York, the District of Colorado, and the United States Court of Appeals for the Second Circuit.

Among the securities class action litigations in which Mr. MacFall has had significant involvement are: *In re Marsh & McLennan Companies, Inc. Securities Litigation*, 04-CV-08144 (CM) (S.D.N.Y. 2009) ($400 million cash settlement); *In re Royal Dutch/Shell Transport Securities Litigation*, No. 04-374 (D. N.J. 2008) (minimum value to the class of U.S. shareholders of $130 million, with a potential value of more than $180 million, in addition to a $350 million European settlement for which the U.S. litigation was recognized as a "substantial factor"); *In re Cigna Corp. Securities Litigation*, No. 2:02 CV 8088 (E.D. Pa. 2006) ($93 million cash settlement); *In re Taser International, Inc. Securities Litigation*, No. C05-0115 (D. Ariz. 2006) ($20 million cash settlement); *In re Terayon Communication Systems, Inc. Securities Litigation*, No. C-00-1967 (N.D. Cal. 2006) ($15 million cash settlement); *In re Take-Two Interactive Software, Inc. Securities Litigation*, No. 1:01-CV-09919 (S.D.N.Y. 2002) ($7.5 million cash settlement); *In re Turnstone Systems, Inc. Securities Litigation*, No. 4:01-CV-01256 (N.D. Cal. 2003) ($7 million cash settlement); *In re NCI Building Systems, Inc. Securities Litigation*, No. 4:01-CV-01280 (S.D. Tex. 2004) ($7 million cash settlement); *In re The St. Paul Companies, Inc. Securities Litigation*, No. 02 Civ. 3825 (D. Minn. 2004) ($6.325 million cash settlement); *In re Sipex Corp. Securities Litigation*, No. 05-CV-00392 (N.D. Cal. 2006) ($6 million cash settlement); *In re Telik, Inc. Securities Litigation*, No. 07-CV-4819 (CM) (S.D.N.Y. 2008) ($5 million cash settlement); and *In re Fidelity Holdings Securities Litigation*, No. 1:00-CV-05078 (E.D.N.Y. 2003) ($4.45 million cash settlement).

Mr. MacFall has been selected for inclusion in the *2010 New York Super Lawyers - Metro Edition* magazine as a leading securities attorney in New York.

*Marc A. Rigrodsky*, Of Counsel to the Firm, has twenty-seven years of legal experience. Mr. Rigrodsky is a graduate of Cornell University and a *summa cum laude* graduate of the Benjamin N. Cardozo School of Law. While at Cardozo, he served on the *Cardozo Law Review*. Mr. Rigrodsky began his legal career as a law clerk to the Honorable Thomas J. Meskill, of the United States Court of Appeals for the Second Circuit.

Following his clerkship, Mr. Rigrodsky was associated with the law firm of Robinson & Cole in Hartford, Connecticut. He worked for the Department of the Navy from 1986-1988, the Department of the Treasury from 1992-2003, and the Department of Transportation from 2003-2007. He was part of Digital Equipment Corporation's law department from 1989-1991, and worked as a full-time consultant for the District of Columbia Retirement Board from 2007-2009. Mr. Rigrodsky is a member of the bars of the State of Connecticut, the District of Columbia and is also admitted to practice before the United States District Court for the District of Connecticut and the United States Supreme Court.

*Scott J. Farrell* is a partner in the Firm and has more than eleven years of legal experience. Mr. Farrell is a *magna cum laude* graduate of Yeshiva University, where he was a Gruss Scholar and was awarded a Max Stern Scholarship, the school's highest honor afforded incoming students. He is also a graduate of New York University School of Law, where he served as Articles and Notes Editor of the *Journal of Legislation and Public Policy*. Upon his graduation from law school, Mr. Farrell served as an associate in the litigation department of Rosenman & Colin LLP (now Katten Muchin Rosenman LLP). In 2002, he joined Wolf Haldenstein Adler Freeman & Herz LLP, where his practice consisted primarily of ERISA, securities, consumer protection and antitrust class action litigation. Mr. Farrell joined Rigrodsky & Long, P.A. as a partner in February 2011.

Mr. Farrell co-authored the articles "Taming the Metadata Beast," *New York Law Journal*, May 16, 2008, and "In re Gary Glass and Zoltan Guttman," *Futures & Derivatives Law Report*, July/August, 1998. He is also a featured faculty member on Lawline.com, an accredited CLE provider, where he is a co-presenter of "Technology and Your Practice: Electronic Discovery, Other ESI Issues, and Reflections on 2009 Developments." He is a member of The Sedona Conference Working Group on Electronic Document Retention and Production.

Mr. Farrell is a member of the bar of the States of New York and New Jersey and is also admitted to practice in the United States District Courts for the Southern and Eastern Districts of New York, the Districts of New Jersey and Colorado, and the United States Court of Appeals for the Second Circuit.

Mr. Farrell also played a prominent role in obtaining the following class recoveries: *In re Iridium Securities Litigation*, No. 99-cv-1002 (D.D.C. 2008) (over $43 million settlement); *In re E.W. Blanch Holdings, Inc. Securities Litigation*, No. 01-258 (D.Minn. 2003) ($20 million settlement); *City Partnership Co. v. Jones Intercable, Inc.*, 99 WM-1051 (D. Colo. 2004) ($10.5 million settlement); *In re Tower Automotive ERISA*

*Litigation,* No. 05-2184 (S.D.N.Y. 2007) ($5.7 million settlement); and *In re Aon ERISA Litigiation,* 04 C 6875 (N.D. Ill. 2010) ($1.8 million settlement and Plan changes).

*Gina M. Serra* is an associate in the Firm.  Ms. Serra is a *cum laude* graduate of both Rowan University in Glassboro, New Jersey, and Widener University School of Law in Wilmington, Delaware.  She graduated from Rowan University with a Bachelor of Arts Degree in Law and Justice, and minors in Political Science and Psychology.  While at Widener Law, Ms. Serra obtained a Trial Advocacy Certificate, with honors.  She was a member of the *Widener Law Review* and vice president of both the Moot Court Honor Society and Justinian Society.  She was also a judicial intern for the Honorable Henry duPont Ridgely of the Supreme Court of Delaware.  Upon graduation from law school, Ms. Serra began her legal career as the judicial law clerk to the Honorable Fred S. Silverman of the Superior Court of Delaware.  She also became a member of the Richard S. Rodney American Inn of Court.  Ms. Serra joined Rigrodsky & Long, P.A. in September 2010.  Ms. Serra is a member of the bars of the State of Delaware, New Jersey, and the Commonwealth of Pennsylvania.  She is also admitted to practice in the United States District Court for the District of Delaware.

*Noah R. Wortman* is the Firm's Case Development Director.  Mr. Wortman has over fifteen years of experience as a legal assistant and case starter identifying, assessing and analyzing potential corporate misconduct in the financial markets.  Mr. Wortman attended Columbia University and the Albert A. List College of the Jewish Theological Seminary of America.

Mr. Wortman began his legal career in 1995 at Morris and Morris in Wilmington, Delaware focusing on corporate and complex business litigation.  From there, Mr. Wortman moved the to the Manhattan office of Skadden Arps Slate Meagher & Flom, LLP.  In 2001, Mr. Wortman joined Barroway Topaz Kessler Meltzer & Check, LLP, a suburban Philadelphia law firm that focuses on securities class action litigation, where he developed a concentration in lead plaintiff jurisprudence.  While there, Mr. Wortman also worked closely with the firm's client and business development department, assisting several of the firm's institutional and individual clients to serve as lead plaintiffs.  In 2006, Mr. Wortman joined the Wilmington, Delaware office of Milberg LLP, where he concentrated his efforts on complex corporate litigation.  While at Milberg LLP, Mr. Wortman was an integral member of the Delaware office's case starting and potential new matter department.

Mr. Wortman is an associate member of both the American Bar Association and the Philadelphia Bar Association.

RIGRODSKY&LONG, P.A.

*SELECT FIRM ACCOMPLISHMENTS*

*In re CNX Gas Corp. S'holders Litig.,*
**Consol. C.A. No. 5377-VCL (Del. Ch.)**

The Firm is co-lead counsel in a class action pending before the Delaware Court of Chancery brought on behalf of the shareholders of CNX Gas ("CXG") who have alleged that they suffered financial injury in connection with the "going-private" acquisition of CXG by its controlling parent company owner, CONSOL Energy, Inc. ("CONSOL"). After expedited proceedings, on May 26, 2010, the Court ruled that plaintiffs had made a sufficient showing that the action should move forward to trial. In so doing, the Court issued an important opinion clarifying and defining the rights of shareholders in the context of a "going-private" tender offer by a controlling shareholder. *In re CNX Gas Corp. S'holders Litig.*, 4 A.3d 397 (Del. Ch. 2010). The lawsuit is ongoing.

*In re Lear Corp. S'holders Litig.,*
**Consol. C.A. No. 2728-VCS (Del. Ch.)**

The Firm served as co-chair of plaintiffs' Executive Committee in this class action brought on behalf of the public shareholders of Lear Corporation ("Lear" or the "Company") in connection with its sale to American Real Estate Partners, L.P. ("AREP"). The Firm represented Classic Fund Management AG (Lear's sixth largest holder) who, along with other significant shareholders, had expressed their concern regarding the price AREP offered to acquire Lear. Despite the opposition voiced by its major institutional shareholders, Lear entered into a merger agreement with AREP, wherein the sale process was tilted in favor of AREP. Among other things, Lear could not terminate the merger agreement without first providing the other bidder's terms to AREP and AREP had the right to top any other offer. As a result, plaintiffs alleged that no rival bidder was likely to emerge. Moreover, plaintiffs believed that the Company's intrinsic value was more than the $36 per share offered by AREP. After the Court consolidated the Lear actions in February 2007, the Firm obtained a preliminary injunction, which prohibited a stockholder vote on the merger until Lear made additional disclosures. *In re Lear Corp. S'holders Litig.*, 926 A.2d 94 (Del. Ch. 2008). As a result of the Firm's efforts, Lear made substantial and remedial disclosures in its June 18, 2007 Proxy supplement, which allowed stockholders to consequently reject the merger in July 2007. In March 2008, after the shareholders rejected the proposed merger, the Court dismissed the class action as moot.

*In re The Topps Co., Inc. S'holders Litig.,*
**Consol. C.A. No. 2786-VCS (Del. Ch.)**

The Firm served as co-lead counsel for plaintiffs in this class action brought on behalf of the public shareholders of The Topps Company, Inc. ("Topps" or the "Company") in connection with its sale to Madison Dearborn Partners and Michael Eisner's The Tornante Company, LLC (collectively, "Tornante"). Plaintiffs alleged that the transaction lacked many of the hallmarks of financial fairness and that the price was unfair and achieved through a process designed to benefit Tornante, to the detriment of Topps' public shareholders. The Firm moved the Court to issue a preliminary injunction to stop the deal. In June 2007, the Court issued a landmark decision granting plaintiffs' injunction motion. *In re The Topps Co., Inc. S'holders Litig.,* 926 A.2d 58 (Del. Ch. 2007). The Court enjoined the merger vote until after Topps granted the competing bidder The Upper Deck Company ("Upper Deck") a waiver of the standstill agreement to make a tender offer, and allowed Upper Deck to communicate with Topps' stockholders about its bid and its version of events.

*Manville Personal Injury Trust v. Blankenship,*
**C.A. No. 07-C-1333 (Cir. Ct. Kanawha Co., W. Va.)**

The Firm served as counsel for plaintiff in this shareholder derivative action brought on behalf of Massey Energy Company ("Massey" or the "Company") against its board of directors and certain of its officers for breach of fiduciary duties arising out of the defendants' alleged conscious failures to cause Massey to comply with applicable environmental and worker-safety laws and regulations. Plaintiff argued that defendants caused severe injury to the Company by consciously ignoring Massey's legal obligations to comply with federal and state law, thereby exposing the Company to a substantial threat of monetary liability for violations. This litigation, filed in the Circuit Court of Kanawha County, West Virginia, caused Massey to implement significant corporate reforms, including improvements to its corporate policies. The parties reached a settlement that, among other things, required Massey to: (i) implement limitations on the length of service of and enhanced membership and meeting attendance requirements for members of the Safety, Environmental and Public Policy Committee ("SEPPC") of the board of directors; (ii) grant the SEPPC authority to retain independent, outside consultants to assist it with its duties; (iii) require that the SEPPC recommend enhancements to the Company's safety and environmental procedures and reporting, including shareholder reporting; (iv) establish certain safety and environmental compliance oversight positions; and (v) implement enhanced employee reporting mechanisms for safety and environmental issues. In June 2008, the Circuit Court approved the settlement. *Manville Personal Injury Trust v. Blankenship,* C.A. No. 07-C-1333 (Cir. Ct. Kanawha Co., W. Va. June 30, 2008) (Order).

RIGRODSKY&LONG, P.A.

*In re: Chiquita Brands Int'l, Inc., Alien Tort Statute and S'holder Deriv. Litig.,*
**C.A. No. 08-01916-MD-Marra/Johnson (S.D. Fla.)**

The Firm acted a counsel for plaintiff City of Philadelphia Public Employees' Retirement System in a shareholder derivative and class action brought on behalf of the public shareholders of Chiquita Brands International ("Chiquita" or the "Company"). Plaintiffs alleged that the Company repeatedly and systematically violated federal law prohibiting transactions with recognized global terrorist organizations.   Plaintiffs alleged that these breaches of fiduciary duty, along with the resultant violations of federal law, had substantially injured the Company in that, among other things, the Company consented to a criminal guilty plea.  After years of litigation, on October 15, 2010, the federal district court entered an Order approving a settlement of the litigation. *In re: Chiquita Brands Int'l, Inc., Alien Tort Statute and S'holder Deriv. Litig.* (S.D. Fla. Oct. 15, 2010) (Order).  Among other things, the settlement provided substantial and important corporate governance reforms relating to the Chiquita board's oversight and management of the Company's compliance with federal law involving Chiquita's overseas business.

*Weaver v. Novelos Therapeutics, Inc.,*
**C.A. No. 10-10394-NMG (D. Mass.)**

The Firm brought a federal securities class action on behalf of all purchasers of the common stock of Novelos Therapeutics, Inc. (the "Company"), who purchased or otherwise acquired the Company's common stock between December 14, 2009 and February 24, 2010, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934, alleging that defendants made materially false and misleading statements concerning the Phase 3 clinical trials of the Company's leading new drug candidate NOV-002 during the Class Period.  On October 1, 2010, the district court appointed the Firm co-lead counsel for the proposed class.  *Weaver v. Novelos Therapeutics, Inc.,* C.A. No. 10-10394-NMG (D. Mass Oct. 1, 2010) (Order).

*In re MBNA Corp. Secs. Litig.,*
**Consol. C.A. No. 05-CV-00272 (GMS) (D. Del.)**

The Firm serves as liaison counsel for lead plaintiff and the members of the putative class in this securities class action brought on behalf of all persons who purchased or otherwise acquired the publicly traded securities of MBNA Corp. ("MBNA" or the "Company") during the period January 20, 2005 through April 20, 2005, inclusive (the "Class Period").  Plaintiffs alleged that, (i) MBNA deceived the market by reporting that MBNA would achieve annual earnings growth of 10%; (ii) the Company failed to disclose that increases in interest rates, which had commenced before the Class Period and continued throughout, were driving down the proper carrying value of the

Company's interest-rate only strips, such that the value of the Company's reported assets were materially overstated; and (iii) the Company did not adjust as appropriate the assumptions and estimates used in determining the fair value of the interest-only strip receivable. As result, on April 21, 2005, MBNA was forced to reveal that: (i) it had to take almost a $207 million write down of its interest-only strip receivable; (ii) its first quarter income was down 93% year-over-year, including the restructuring charge; and (iii) it expected full year earnings to be significantly below the 10% growth objective. On July 6, 2007, Chief Judge Gregory Sleet denied defendants' motion to dismiss the amended complaint. *Baker v. MBNA Corp.*, Consol. C.A. No. 05-cv-00272 (GMS) (D. Del Jul. 6, 2007) (Mem. Op.). Subsequently, after substantial litigation, the parties settled the litigation resulting in the creation of a $25 million fund to compensate injured investors. *Baker v. MBNA Corp.*, Consol. C.A. No. 05-cv-00272 (GMS) (D. Del. Oct. 6, 2009) (Order).

*In re Molson Coors Brewing Co. Secs. Litig.*,
Consol. C.A. No. 05-CV-00294 (GMS) (D. Del.)

The Firm serves as liaison counsel on behalf of lead plaintiffs Drywall Acoustic Lathing and Insulation Local 675 Pension Fund, Metzler Investment GmbH and the members of the putative class in this securities class action brought on behalf of all persons who are: (i) former shareholders of Molson Coors ("Molson Coors") as a result of the February 9, 2005 merger of Molson by and into Coors; (ii) open market purchasers of Coors common stock from July 22, 2004 through February 9, 2005; and (iii) open market purchasers of Molson Coors common stock, from the completion of the merger through April 27, 2005, inclusive. Plaintiffs allege that Molson Coors made false and misleading statements, including: (i) the cost saving synergies represented by Molson Coors were impossible to achieve because, among other things, Coors' rapidly increasing distribution costs would adversely effect the potential cost saving synergies; (ii) Molson and Coors were already distributing each other's products, further reducing the possibility of cost saving synergies; (iii) the merger would actually incur significant post-merger expenses due to the expected exodus of Coors senior executives who would be paid millions of dollars in benefits; and (iv) Molson Coors would inherit Molson's Brazilian operations, which were an unmitigated failure that eventually necessitated a $500 million post-merger charge and the sale of Molson's Brazilian interests at a fraction of their cost. After extensive litigation efforts in both the United States and Canadian actions, the parties settled the lawsuits resulting in the creation of a $6 million fund for the payment of investor claims. *In re Molson Coors Brewing Co. Secs. Litig.*, Civ. A. No. 05-cv-00294-GMS (Consolidated) (D. Del. May 19, 2009).

RIGRODSKY&LONG, P.A.

**In re: Idearc ERISA Litig.,**
**Master Docket: 3:09-CV-2354-N (N.D. Tex.)**

The Firm brought an action under ERISA on behalf of participants of the Idearc Savings Plan for Management Employees, the Idearc Savings and Security Plan for New York and New England Associates, and the Idearc Savings and Security Plan for Mid-Atlantic Associates (all plans subsequently merged into one plan and was renamed, The Idearc Savings Plan (the "Plan")), alleging that the Plan imprudently invested in Idearc stock. In addition, it is alleged that defendants failed to disclose that: (i) management had materially overstated net receivables, operating revenue and net income by failing to adjust the provision for uncollectible accounts receivable based upon its knowledge of the deterioration of the quality of the Company's customers and the fictitious billing to its former customers; and (ii) due to the rapidly increasing build-up of uncollectible receivables, a liquidity crisis (resulting in an inability to meet debt payments as they came due) was imminent. On August 8, 2010, the Firm was appointed Co-Lead Counsel for the proposed class. *In re: Idearc ERISA Litig.*, Master Docket: 3:09-CV-2354-N (N.D. Tex. Aug. 8, 2010). The litigation is ongoing.

**In re Metrologic Instruments, Inc. S'holders Litig.,**
**Docket No. L-6430-06 (N.J. Super. Ct., Law Div.)**

The Firm serves as Court-appointed chair of plaintiffs' Committee on behalf of Metrologic, Inc. ("Metrologic" or the "Company") shareholders. This case is a class action that arose from the transaction to cash out the Company's minority shareholders in a merger for alleged inadequate consideration, negotiated through coercive means. Plaintiffs allege that the board of directors unanimously approved Metrologic's acquisition by entities owned and affiliated with Francisco Partners II, L.P., C. Harry Knowles (the Company's founder and Chairman of the Board), Elliott Associates, L.P. and Elliott International, L.P. ("Elliott"). C. Harry Knowles and Elliott (the "Knowles Group") are together controlling shareholders of Metrologic. The Knowles Group entered into voting agreements to vote their 49% in favor of the deal in addition to an undisclosed group of the Company's directors and executive officers that agreed to vote their 1.1% in favor of the deal. Therefore, 50.1% of the shares were contractually committed to voting in favor of the transaction. Furthermore, the proxy allegedly failed to disclose that even though the Knowles Group was receiving the same consideration for their shares being cashed out, they were also receiving additional consideration for the shares that they rolled over for equity in the surviving entity. On April 17, 2009, the Court denied defendants' motion to dismiss the case. *In re Metrologic Instruments, Inc. S'holders Litig.*, Docket No. L-6430-06 (N.J. Super. Ct., Law Div. Apr. 17, 2009) (Order). This case is ongoing.

11

*County of York Employees Ret. Plan v. Merrill Lynch & Co., Inc.,*
**C.A. No. 4066-VCN (Del. Ch.)**

The Firm serves as lead counsel for plaintiff in this class action brought on behalf of the public shareholders of Merrill Lynch & Co. ("Merrill") in connection with its sale to Bank of America Corporation ("BofA"). Plaintiff County of York Employees Retirement Plan alleged that the individual defendants hastily agreed to sell the Company over the course of a weekend without adequately informing themselves of the true value of the Company or the feasibility of securing a viable alternative transaction that would be more beneficial to shareholders than the Proposed Acquisition. On October 28, 2008, the Delaware Court granted, in part, plaintiff's motion to expedite discovery and denied defendants' motion to stay or dismiss. *County of York Employees Ret. Plan v. Merrill Lynch & Co., Inc.,* C.A. No. 4066-VCN, 2008 Del. Ch. LEXIS 162 (Del. Ch. Oct. 28, 2008). Subsequently, the Firm engaged in expedited discovery. After engaging in arm's-length negotiations, the parties reached a settlement whereby defendants made additional, substantive disclosures in their Definitive Proxy. Thereafter, the shareholders of Merrill and BofA approved the merger.

*David B. Shaev IRA v. Sidhu,*
**No. 00983, November Term 2005 (Phila. C.C.P., Commerce Div.)**

The Firm served as co-lead counsel in this shareholder derivative and class action brought on behalf of the public shareholders of Sovereign Bancorp, Inc. ("Sovereign"). Sovereign completed its two-part transaction (the "Santander Transaction") whereby Sovereign sold 19.8% of the Company to Banco Santander Central Hispano, S.A., and used the proceeds to fund its acquisition of Independence Community Bancorp. Plaintiffs alleged that Sovereign's board of directors purposely structured the Santander Transaction to be below the 20% change in control threshold established by the New York Stock Exchange. Additionally, plaintiffs alleged the board had improper motives of entrenchment and participated in protection of their own self interests and the improper subversion of a Proxy contest launched by Sovereign's largest shareholder, Relational Investors, LLC. Following the close of the sale in May 2006, the Firm helped negotiate a settlement of the litigation, which conferred substantial benefits on the Company and Class Members, including substantial corporate governance changes adopted by the Company. The Court approved the settlement. *David B. Shaev IRA v. Sidhu,* No. 00983 (Phila C.P., Commerce Div. Oct. 28, 2008) (Order). The Supreme Court of Pennsylvania upheld the settlement, which had been challenged in both the trial court and the intermediate appellate court. *Shaev v. Sidhu,* Pennsylvania Docket No. 470 EAL 2010 (Pa. Dec. 21, 2010) (Order).

*Loschiavo, et al. v. Fidelity Management Trust Company and Ernst & Young,*
**C.A. No. 1:10-cv-08631-LAK (S.D.N.Y.)**

The Firm brought a derivative action on behalf of the Lehman Brothers ("Lehman") Savings Plan (the "Plan") against Lehman's auditor, Ernst & Young ("E&Y"), for E&Y's negligence in conducting the audits of Lehman from July 10, 2007 through and including September 15, 2008, and a breach of fiduciary duty action against the Plan trustee, Fidelity Management Trust Company, for failing to preserve and maintain the assets of the Plan by failing to initiate an action on behalf of the Plan to recover losses caused by E&Y's negligently conducted audits of Lehman. The litigation is ongoing.

*Winfield, et al. v. Citibank, N.A.,*
**C.A. No. 10-civ-7304-JGK (S.D.N.Y.)**

The Firm brought an action under the Fair labor Standards Act ("FLSA") on behalf of current and former Personal Bankers employed by Citibank, N.A. (the "Company"), whose job responsibilities made it necessary for them to work, and who did work, in excess of 40 hours per week, but were improperly denied overtime compensation. Because the Company wrongfully refused to pay overtime compensation for the time in excess of 40 hours per week worked by plaintiffs and other similarly situated Personal Bankers, the contributions made to plaintiffs' retirement accounts under the Citigroup 401(k) Plan were lower than they would have been had the Company properly paid the overtime compensation to which they were entitled. The litigation is ongoing.

*Helaba Invest Kapitalanlagegsellschaft mbH v. Fialkow,*
**C.A. No. 2683-N (Del. Ch.)**

The Firm served as counsel for lead plaintiff Helaba Invest Kapitalanlagegsellschaft mbH (a European institutional investor) in this class action on behalf of the public shareholders of National Home Health Care Corp. ("National Home" or the "Company"). The litigation sought to enjoin the proposed acquisition of National Home by a consortium composed of Angelo, Gordon & Co. and Eureka Capital Partners ("Angelo Gordon") for inadequate consideration. The plaintiff alleged that certain defendants, who collectively held more than fifty percent of the National Home's outstanding stock, agreed to vote in favor of the deal and that certain of these defendants would receive benefits from National Home and Angelo Gordon not shared by the National Home's minority, public shareholders. As a result of the Firm's negotiations with defendants, the parties reached a settlement by which additional, curative disclosures were made in National Home's amended proxy statements and after holding meetings with the Company's special committee and board of directors, Angelo Gordon agreed to pay an additional $1.35 per share, a financial benefit of more

than $3.76 million to National Home's shareholders.  In addition, even after the Merger Agreement was approved, the Firm continued to advocate on behalf of shareholders, and Gordon agreed to allow the Company to increase its next quarterly dividend, representing approximately $260,000 in additional value.  The Court approved the settlement.  *Helaba Invest Kapitalanlagegsellschaft mbH v. Fialkow,* C.A. No. 2683-N (Del. Ch. Mar. 12, 2008) (Order).

### *Neil L. Sclater-Booth v. SCOR S.A. and Patinex AG,* C.A. No. 07-CV-3476-GEL (S.D.N.Y.)

The Firm served as co-lead counsel for plaintiff in this class action brought on behalf of the public shareholders of Converium Holding AG ("Converium" or the "Company") and holders of the Company's American Depository Shares against SCOR S.A. ("SCOR") and Patinex AG ("Patinex") in connection with SCOR and Patinex's acquisition of Converium.  Plaintiff alleged that the acquisition was unfair to the Class.  As a result of the Firm's action, SCOR agreed to settle the litigation by increasing its offer price by 7.9%, or $259.6 million.  Citing the efforts of plaintiff's counsel, the Court approved the settlement.  *Neil L. Sclater-Booth v. SCOR S.A. and Patinex AG,* C.A. No. 3476-GEL (S.D.N.Y. Feb. 8, 2008) (Order).

### *Plymouth Co. Ret. Sys. v. MacDermid, Inc.,* C.A. No. 2006CV9741 (Colo. Dist. Ct. - Denver Co.)

The Firm served as co-lead counsel on behalf of lead plaintiff Plymouth County Retirement System and the class of MacDermid, Inc. ("MacDermid" or the "Company") shareholders.  This case was a class action arising from the proposed acquisition of MacDermid by Daniel H. Leever (the Company's Chairman and Chief Executive), Court Square Capital Partners II, L.P., and Weston Presidio V, L.P.  Among other things, plaintiff alleged that the Company's proxy did not disclose that the directors who approved the proposed transaction would receive more than $17 million for certain options, the amount or value that certain directors would be able to invest after completion of the proposed transaction, and certain facts and assumptions underlying the Fairness Opinion.  As a result of the Firm's negotiations with defendants, MacDermid made additional disclosures in its Definitive Proxy Statement, including but not limited to, the compensation and involvement of key company insiders, information regarding competing bidders and financial analysis by Merrill Lynch.  The Court approved the settlement.  *Plymouth Co. Ret. Sys. v. MacDermid, Inc.,* C.A. No. 2006CV9741 (Colo. Dist. Ct. – Denver Co. Dec. 10, 2007) (Order).

RIGRODSKY&LONG, P.A.

*Schultze Asset Mgmt. LLC v. Washington Group Int'l, Inc.,*
**C.A. No. 3261-VCN (Del. Ch.)**

The Firm served as co-counsel for plaintiff in this class action brought on behalf of the public shareholders of Washington Group International, Inc. ("Washington Group" or the "Company") in connection with its sale to URS Corporation. Plaintiff alleged that the transaction was financially and procedurally unfair to Washington Group's shareholders. In addition, plaintiff alleged that the Company's Definitive Proxy Statement was materially misleading because, among other things, it failed to explain why Washington Group used overly conservative financial projections to support the Fairness Opinion issued in connection with the transactions. As result of the Firm's negotiations with defendants, Washington Group agreed to and made additional curative disclosures in the Definitive Proxy Statement. Specifically, the Company agreed to disclose additional information concerning the potential impact of existing contract claims asserted by the Company and their impact on the Company's valuation, the Company's efforts to solicit potential acquirers, and the analyses performed by Goldman Sachs (the Company's financial advisor) in support of the Merger, among other things. Additionally, Washington Group amended the Merger Agreement whereby it increased the amount of consideration paid to each Washington Group shareholder. The Court approved the settlement. *Schultze Asset Mgmt. LLC v. Washington Group Int'l, Inc.,* C.A. No. 3261-VCN (Del. Ch. May 22, 2008) (Order).

*In re Am. Pharmaceutical Partners, Inc. S'holders Litig.,*
**Cons. C.A. No. 1823-VCL (Del. Ch.)**

The Firm served as a member of plaintiffs' Executive Committee in this class action brought on behalf of the public shareholders of American Pharmaceutical Partners, Inc. ("APP" or the "Company") in connection with its acquisition of American BioScience, Inc. Plaintiffs alleged that the acquisition would have diluted the voting rights of each share of the Company, to the detriment of minority shareholders. Plaintiffs also asserted claims derivatively on behalf of the Company, which was directly harmed, among other things, when the Company's investors fled *en masse* upon announcement of the merger, and because the merger transferred the bulk of the Company's value to defendant Dr. Patrick Soon-Shiong for allegedly inadequate consideration. In April 2006, the merger was completed and subsequently plaintiffs filed their First Consolidated Class Action Complaint in June 2006. After nearly 18 months of arm's-length negotiations and the production of thousands of pages in documents in response to plaintiffs' subpoenas, the parties agreed to mediation and an agreement-in-principle to settle the action. In July 2008, the parties agreed to settle the action for $14.3 million, to be paid by defendants, which represents approximately $0.60 per damaged minority share for the shareholders. The Court approved the settlement. *In re Am. Pharmaceutical Partners, Inc. S'holders Litig.,* Consol. C.A. No. 1823-VCL (Del. Ch. Dec. 16, 2008) (Order).

RIGRODSKY&LONG, P.A.

*Sheetmetal Workers' Nat'l Pension Fund v. Hill,*
**C.A. No. 07-cv-2269 (RBK) (D.N.J.)**

The Firm served as counsel for plaintiff Sheetmetal Workers' National Pension Fund in this consolidated shareholder derivative and class action brought on behalf of the public shareholders of Commerce Bancorp, Inc. ("Commerce" or the "Company") in connection with two regulatory investigations of Commerce and its subsequent acquisition by PNC Bank in a merger transaction (the "Merger"). Plaintiff alleged that the members of the board of directors of Commerce violated their fiduciary duties to the Company by approving a course of conduct whereby Commerce made unsafe loans and engaged in questionable related party transactions with its officers and directors and that the price offered in the Merger was unfair. Sheetmetal requested the Court to issue an injunction to stop the Merger and sought expedited discovery. After extensive discovery, the Firm helped negotiate a settlement, which obtained a $77 million reduction in the termination fee, and numerous additional disclosures in the Definitive Proxy Statement. The Court approved the settlement. *Sheetmetal Workers' Nat'l Pension Fund v. Hill*, C.A. No. 07-cv-269 (D.N.J. May 9, 2008) (Order).

*Virgin Islands Gov. Employees' Ret. Sys. v. Alvarez,*
**C.A. No. 3976-VCS (Del. Ch.)**

The Firm served as counsel for plaintiff in this derivative and class action brought on behalf of the public shareholders of UnionBanCal Corporation ("UnionBanCal" or the "Company") against its Board of Directors and certain officers for breach of fiduciary duties arising from the defendants' repeated and systematic failure to implement anti-money laundering procedures and policies, in violation of federal laws including the Bank Secrecy Act. The class action claims arose in connection with a tender offer launched by Mitsubishi UFJ Financial Group ("MUFG") and Bank of Tokyo-UFJ Ltd. Plaintiff Virgin Islands Government Employees' Retirement System alleged that the merger consideration was unfair in a number of respects, including the fact that the Company's share price was substantially depressed as a result of defendants' egregious failures to comply with anti-money laundering laws and regulations. The Firm coordinated efforts with a similar litigation in California, reviewing document production, deposing key witnesses, and negotiating a settlement in which UnionBanCal agreed to and made additional material disclosures concerning the transaction. The Court approved the settlement. *Virgin Islands Gov. Employees' Ret. Sys. v. Alvarez*, C.A. No. 3976-VCS (Del. Ch. Dec. 2, 2008) (Order).

# EXHIBIT F

# GORDON LAW OFFICES

**GORDON LAW OFFICES** is a small Idaho law firm based in Boise, Idaho, with a strong practice emphasis in a wide range of class action litigation. From 1989 to the present, the attorneys of Gordon Law Offices have been involved in complex litigation in the areas of securities, consumer products, anti-trust, insurance, taxation, and human rights, in the federal and state courts of Idaho and elsewhere. Philip Gordon has served as the liaison counsel for virtually every securities fraud class action which has been filed before this Court since 1989.

**PHILIP GORDON** is well known to members of the Idaho Bench and Bar for his work in dozens of class actions. Mr. Gordon is a graduate of Williams College (1965), and the University of Idaho College of Law (1976). Upon his graduation from law school, Mr. Gordon received a Fulbright Fellowship to attend the Diploma in Graduate Legal Studies Program at the University of Stockholm, Sweden. Since 1977, Mr. Gordon has been engaged in the private practice of law in Idaho, the last 23 years of which have been in Boise.

**BRUCE S. BISTLINE** is also well known to and highly respected by practicing lawyers and judges throughout Idaho. He has worked extensively on a number of important class action cases, and has familiarity with many phases of class action theory and practice. Mr. Bistline is a 1973 graduate of Colorado College, and he, too, graduated from the University of Idaho College of Law in 1976. Bruce possesses a unique combination of creativity and the ability to pay attention to the smallest detail. He has been in private practice for most of the last 34 years.

## LIST OF CLASS ACTION AND PROPOSED CLASS ACTION CASES IN WHICH PHILIP GORDON AND BRUCE BISTLINE OF GORDON LAW OFFICES HAVE BEEN INVOLVED

In re Micron Technology Securities Litigation, No. 89-1262-S-HLR (D. Idaho) (securities fraud). This case, which was one of the first modern class actions sounding in securities fraud and insider trading, settled in 1994.

In re Morrison Knudsen Securities Litigation, No. 94-0334-S-EJL (D. IDAHO) (securities fraud). Counsel achieved a very significant settlement for the class members, consisting both of a monetary award and shares of stock in the company.

In re MK Rail Securities Litigation, No. 94-0477-S-EJL (D. Idaho) (securities fraud). This action, a companion case to the Morrison Knudsen filing, was also settled favorably for the class.

Sandpiper Village et al. v. Louisiana Pacific, Inc., No. CV 95-879-JE-LEAD (D. Oregon) (Consumer Fraud involving defective exterior siding). A huge nationwide settlement was achieved involving hundreds of thousands of homeowners.

Lair v. U.S. West Communications, No. 95-1135R (Consumer Fraud involving rounding up cellular telephone calls to the next minute). A settlement favorable to class members was achieved in the Superior Court for King County.

Peterson v. A.T. & T. Wireless Communications, No. 95 Case No. 95-2-27642-3 SEA

Goldschmid v. Cirrhus Logic, No. C-95-3978-EFL (N.D. California) (securities fraud)

Smith v. Micron Electronics (Ada County, Idaho District Court)(this case alleged violations of the Idaho Consumer Protection Action in connection with the Defendant's claims that its 486 Computers were "Pentium upgradeable". The District Court granted summary judgment to the Defendant, and Plaintiffs appealed. The case was settled prior to remand, albeit on an individual basis.)

Rose v. Albertson's, Inc. (United States District Court for the District of Idaho)(Fair Labor Standards Act case, wherein a class of employees is alleging, inter alia, that they were made to work "off the clock". This is the first case in history where the Multi-District Litigation Panel of the Federal Courts sent all of the cases from the various Federal Judicial Districts to Idaho for consolidation). The Plaintiffs received a very large settlement representing back pay for their uncompensated hours.

Bailey v. Idaho Tax Commission (Ada County, Idaho District Court, 1998, CASE NO. CV OC 98-05856 D)(this was a case where Plaintiff Costco members sued the Tax Commission claiming that the Commission had wrongly required Costco to impose, collect and remit to the Commission Idaho Sales Tax on Costco memberships and renewals. The Court granted Summary Judgment for the Plaintiffs and a Settlement followed.) Gordon Law Offices was the only firm representing the Plaintiffs in this case.

Bluth v. Utah State Tax Commission (Salt Lake County, Utah District Court, case Number 996911509)(This is another case involving the imposition of sales taxes on Costco memberships and renewals. The District Court granted Summary Judgment for the State, which was overturned by the interim appellate Court. The Utah Supreme Court reversed the Court of Appeals and reinstated the Summary Judgment.)

Peterson v. TCI (Ada County, Idaho, District Court case number CV OC 9706688D)(This was one of a series of cases brought throughout the Country wherein TCI customers asked Courts to find that TCI Cablevision's "late fees" were unreasonable and constituted a prohibited liquidated damages provision.)(All outstanding cases were settled individually, but on nationally applicable terms.)

Coker v. Regence Blue Shield of Idaho (Bannock County, Idaho, District Court, Case No. CV OC 99-01580 C; filed 10/12/99)(A number of physicians sued one of Idaho's largest health insurance companies, on behalf of all physicians, claiming that Blue Shield's unilateral decision to change its method of reimbursing physician providers constituted a breach of its contract with

them.) A settlement was achieved.

Greenberg v. Peter L. Malkin et al (United States District Court, Southern District of New York). (Here, the Plaintiff and all members of the proposed class owned "participation interests" in a large midtown Manhattan commercial building, which interests had previously been determined to constitute "securities", subject to SEC regulation. The action charged the Defendants with having violated Federal securities laws and regulations relating to proxies, having breached fiduciary duties, and having displayed a conflict of interest. The Plaintiff class was unsuccessful at trial.)

Dram Anti-Trust/Price Fixing Cases (Multi-District Litigation ["MDL"} action now pending in the United States District Court for the Northern District of California.)  Gordon Law Offices filed five separate Anti-Trust Actions against the makers of Dynamic Random Access Memory ("DRAM") chips.  The MDL panel of the Federal Courts consolidated these cases, along  with numerous other cases from around the country in the Northern District of California. A settlement of $326 million dollars was achieved.

Moon et al. V. North Idaho Farmers et al.  No. CV 02-3890 (First Judicial District of the State of Idaho, County of Kootenai). (This action was brought by a large number of citizens of the northernmost counties of Idaho seeking to prevent Kentucky blue-grass producers from annually burning the stubble remaining after the grass was harvested.  A settlement was approved by the Court on January 31st, 2006.)

Guidant Corporation (United States District Court in Indiana, filed August, 2005) This is an action brought by an individual who had been implanted with a defective pacemaker manufactured by the Defendant company.  This model pacemaker was subject to a nation-wide recall.)

Schilling, et al. v. America Online, Inc. (Ada County, Idaho District Court, Case No. CV OC 00-01054 D) (A proposed class action brought on behalf of a class composed of AOL 5.0 users.)

Dorman, et al. v. The Cooper Tire and Rubber Company (Ada County, Idaho District Court, Case No. CV OC 0006967 D)  This consumer protection suit alleged that Defendant's tires contained manufacturing defects undetectable to consumers, which created imminent and substantial danger or risk of injury to plaintiffs and class members.  This case was settled on a national basis.

Richardson, et al. v. Hubble Homes, formerly known as Cherry Lane Homes, LLC, Hubble Engineering, Inc. (Ada County, Idaho District Court, Case No.:  CV OC 02 09633D) (Plaintiffs recovered damages caused to their homes by groundwater. This case was settled on individual bases, without a class being certified.)

Dahl v. Hubble Homes, formerly known as Cherry Lane Homes, LLC, Hubble Engineering, Inc. (Ada County, Idaho District Court, Case No.:  CVOC 02 09633D) (This was a

companion case to Richardson, involving the same issues in an adjoining subdivision. It, too, was settled prior to a class being certified.)

Breish et al. v. American Cemwood Corporation and MacMillan-Bloedel, Ltd. (Boise County, Idaho District Court) (This was a nationwide consumer protection action brought in state Court in Stockton, California. The Defendant manufactured and sold a roofing material which came with a fifty year warranty, but which generally began cracking, breaking, decaying, curling, lifting, and/or permitting leakage within 2- 5 years. A very favorable nationwide settlement was achieved, which provided most purchasers of this defective product sufficient funds to completely replace their roofs.)

Sarei, et al. v. Rio Tinto Mines (An action brought under the "Alien Tort Claims Statute" in United States District Court for the Central District of California. This action was dismissed by the District Judge on the grounds of "comity of nations" and "political question". The case was appealed to the Ninth Circuit Court of Appeals, which has since issued 3 separate opinions (a 3 judge panel, with one dissent, reversed and remanded on August 6th, 2006; rehearing was granted and a divided panel affirmed itself on April 12th, 2007; and an En Banc decision consisting of 5 separate opinions issued on December 16th, 2008.) Inexplicably, the mandate was withdrawn and the case is still languishing in the Circuit. (The proposed Plaintiff class here are residents of the island of Bougainville in the Country of Papua New Guinea, who were damaged by the actions of the defendant, which is the largest mining company in the world. In connection with this case, Philip Gordon traveled to New Guinea in late 2000 and again in early 2009. On the latter trip he was the guest of the Prime Minister on two occasions.) In late October, 2010, the Ninth Circuit issued an Order, referring the case to Senior Circuit Judge Edward Leavy to explore whether or not mediation is feasible, and instructing Judge Leavy to report back to the en banc panel within 28 days.

Churchill v. Sage US Holdings, Inc.  (Dallas County, Texas District Court, Cause No. DV 99-05864) (Action brought by an Idaho lawyer Plaintiff against the seller of "Time and Billing" software "TIMESLIPS" Version 9.0. Many of the lawyers and law firms who purchased this release, either as a new installation, or to upgrade from the established Version 8.0, experienced significant problems with installing and running this software. Often, large amounts of data were lost, and some firms were simply unable to make this program run with their existing systems. Many lawyers simply abandoned the software, often after significant expenditures of time and money. There was a nationwide settlement.)

Muzinich v. Raytheon Corporation (No.CV 01-284, United States District Court for the District of Idaho)(This was a securities fraud class brought by the shareholders of Morrison-Knudsen [later Washington Group International] against Raytheon and two of its ranking officers, alleging that the shareholders were injured when Raytheon defrauded MK in connection with the sale to MK of Raytheon Engineers and Constructors, a division of the parent company. The settlement of this case was approved by United States District Judge Winmill on July 11th, 2005.)

GORDON LAW OFFICES RESUME - Page 4

Bafus v. Coldwell Banker (No. CV-04-121), Blough et al. v. Holland Realty (No. 06-cv-59), Yasuda et al. v. Sel-Equity (No. 06-cv-60) and Merrithew et al v. Park Pointe Realty, Inc. (No. 06-cv-61) are four cases brought in the Untied States District Court for the District of Idaho) (Each is an anti-trust action brought by a couple who sought to purchase a lot in a subdivision marketed by the respective Defendant, and were told that they could not purchase a lot, but instead had to purchase a home from a "member of the builder team" permitted to build in the subdivision. After surviving Motions to Dismiss brought by the respective Defendants on various grounds, and having a class certified in each case, Judge Winmill eventually dismissed all four cases, and the Ninth Circuit upheld the dismissals.)

In re: Menu Foods: Gordon Law Offices filed cases both in Idaho and the Western District of Washington on behalf of pet owners whose dogs and cats were sickened or killed by eating contaminated pet food. These cases, along with others from all over the country, were consolidated in New Jersey by the MDL panel. A nationwide settlement was achieved, however one or more objectors to the settlement appealed the denial of their objections and the matter is now on appeal.

Static Random Access Memory (MDL #1819): This is an action brought by a two Idaho plaintiffs who bought products which incorporate SRAM chips. The Idaho actions, along with numerous actions from around the country, were assigned by the MDL panel to the United States District Court for the Northern District of California. The case is pending.

Carmona et al v. Bryant et al (CV OC 0601251 Fourth Judicial District of the State of Idaho, County of Ada): This was an action brought by Shareholders of Albertson's seeking to block the sale of the company to Supervalu, which produced a disclosure settlement.

Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. AMIS Holdings, Inc. et al (CV-07-5396-DC Sixth Judicial District of the State of Idaho, County of Bannock): This was another action where shareholders sued to block the sale of the company. After ascertaining that the sale of the company was inherently fair to the shareholders, Plaintiffs settled the case on the basis that the Defendants made additional disclosures.

In re Atlas Mining Company, Securities Litigation (07-428-N-EJL United States District Court for the District of Idaho): In this Securities Fraud Class Action, Gordon Law Offices was aligned with a number of national counsel, none of whom was appointed as lead counsel, and the firm therefore played only a nominal role. The action was settled in early 2010.

Farber et al v. Idaho State Insurance Fund et al (CV 06-7877 Third Judicial District of the State of Idaho, County of Canyon): This action was brought on behalf of a class of small businesses who purchased their Worker's Compensation Insurance from the fund. Historically, and pursuant to a statute allowing it to do so, the Fund had, in most years, paid dividends to all of its business policy-holders. Starting with the dividend paid in early 2003, however, the Fund decided it would only pay dividends to policy holders whose premium exceeded $2,500.00. Plaintiffs sought a declaration that the statute required the Fund, if it decided to pay any

dividends, to pay them to all policy holders, pro-rata based on the amount of their premiums. After the District Court granted summary judgment to the Fund, the Idaho Supreme Court unanimously reversed and remanded, essentially adopting Plaintiffs' construction of the statute and, in essence, granting summary judgment to the Plaintiffs. The case settled as to a number of policy years in early February, 2010, and the settlement was approved in late September, 2010. An issue remains as to whether two earlier years were properly excluded from the class due to the application of the statute of limitations, and this issue is now before the Idaho Supreme Court.

CDA Dairy Queen v. Idaho State Insurance Fund *et al* (CV 09-13607-C, Third Judicial District of the State of Idaho, County of Canyon): In the course of conducting discovery in the *Farber* case (preceding paragraph) Counsel learned that, rather than dividing those dividends it did distribute *pro rata*, based solely on premium size, the Fund was utilizing a sliding scale, whereby the larger was the size of the premium, the higher was the percentage of that premium returned as a dividend. In December, 2009, an action was brought on behalf of a class of policyholders who had received some dividends, but less than they were entitled to receive under the Supreme Court's *Farber* ruling. This case poses some novel issues due to the fact that, after the Court decided *Farber*, the Idaho Legislature passed a law repealing the statute which authorized the Fund to pay dividends, *retroactive to 2003*. Believing that making the repeal retroactive violated the State and Federal Constitutional provisions forbidding States from passing any law that, *inter alia*, impaired the obligations of contracts, Plaintiffs filed a Motion for Partial Summary Judgment, asking the Court to find and rule that making the repeal retroactive is unconstitutional. A hearing on Plaintiffs' Motion is set for December, 2010.

IN RE: Fresh and Process Potatoes Antitrust Litigation: (Case No. 4:10-MD-02186, United States District Court for the District of Idaho): Philip Gordon has been appointed as Liaison Counsel for what may arguably become the largest Anti-Trust case in the history of Idaho. The Defendants are many of the largest potato growers in Idaho and elsewhere, along with many state-wide and national grower organizations. Plaintiffs are represented by a host of premier Anti-Trust firms from across the country. Gordon Law Offices has helped make legal history for the United States District Court for the District of Idaho by filing Pro Haec Applications for 25 co-counsel. Oral argument on the Defendants' Motions to Dismiss on the grounds that they have immunity pursuant to the Capper-Volstead Act are set for June, 2011.

PCS Edventures!.Com Securities Fraud Class Action (Case Number 10-CV-00479, United States District Court for the District of Idaho): In this securities fraud class action, two firms, one from New York and one from California, filed Lead Plaintiff/Lead Counsel Motions. Both firms asked Gordon Law Offices to serve as their Liaison Counsel. The Court heard argument on this Motion in January, 2011, and issued its opinion the following month. A Consolidated Amended Complaint will be filed shortly.