GORDON LAW OFFICES
Philip H. Gordon, ISBN 1996
pgordon@gordonlawoffices.com
Bruce S. Bistline, ISBN 1988
bbistline@gordonlawoffices.com
623 W. Hays Street
Boise, ID 83702
Telephone: (208) 345-7100
Facsimile: (208) 345-0050

*[Proposed] Liaison Counsel for Plaintiff*

ROBBINS UMEDA LLP
Marc M. Umeda
mumeda@robbinsumeda.com
Gregory E. Del Gaizo
gdelgaizo@robbinsumeda.com
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

*[Proposed] Lead Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LANCE TEAGUE, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>ALTERNATE ENERGY HOLDINGS, INC., DONALD L. GILLISPIE, and JENNIFER RANSOM,<br><br>　　　　　　　　Defendants. | Civil Action No. 1:10-CV-00634-BLN<br><br>CLASS ACTION<br><br>**MEMORANDUM OF LAW IN SUPPORT OF RICHARD MERTZ'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL** |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

I. SUMMARY OF ARGUMENT ...............................................................................1

II. STATEMENT OF FACTS .......................................................................................1

III. ARGUMENT............................................................................................................4

    A.    Mr. Mertz Satisfies the PSLRA's Requirements and Should Be Appointed Lead Plaintiff ..............................................................................4

        1.    Mr. Mertz Has Timely Moved for Appointment as Lead Plaintiff ............................................................................................5

        2.    Mr. Mertz Has the Requisite Financial Interest in the Relief Sought by the Class ..................................................................5

        3.    Mr. Mertz Satisfies the Requirements of Rule 23 ...................6

            a.    Typicality ..................................................................................6

            b.    Adequacy ..................................................................................7

    B.    Mr. Mertz's Selection of Lead and Liaison Counsel Should Be Approved .............8

IV. CONCLUSION.........................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................................... 7

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ................................................................................. 6, 7

*Hodges v. Akeena Solar, Inc.*,
   263 F.R.D. 528 (N.D. Cal. 2009) ........................................................................... 6, 7

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002). ............................................................................ 5, 6, 7

**STATUTES**

15 U.S.C.
   §78u-4 (a)(3)(A)-(B) .................................................................................................. 5
   §78u-4 (a)(3)(A)(i) ..................................................................................................... 5
   §78u-4 (a)(3)(B) ..................................................................................................... 5, 6
   §78u-4 (a)(3)(B)(iii) ............................................................................................ 1, 5, 6
   §78u-4 (a)(I)-(3)(B)(i) ................................................................................................ 4
   §78u-4(a)(3)(B) ...................................................................................................... 5, 6
   §78u-4 (a)(3)(B)(v) ................................................................................................ 1, 8

Federal Rules of Civil Procedure Rule 23 ............................................................................. 1, 5

Class member Richard Mertz ("Mr. Mertz") respectfully submits this memorandum of law in support of his motion for: (1) appointment as lead plaintiff in the above-referenced action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4; and (2) approval of his selection of Robbins Umeda LLP ("Robbins Umeda") as lead counsel and Gordon Law Offices ("Gordon Law") as liaison counsel for the class.

## I. SUMMARY OF ARGUMENT

Presently pending in this district is a securities class action lawsuit brought on behalf of purchasers of Alternate Energy Holdings, Inc.'s ("AEHI" or the "Company") securities during the period between September 20, 2006 and December 14, 2010 ("Class Period"). This action is brought pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.

The PSLRA sets forth the manner by which courts are to select a lead plaintiff. Pursuant to the PSLRA, the Court is to appoint as lead plaintiff the movant that timely files for appointment of lead plaintiff with the largest financial interest in the litigation and that otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. §78u-4 (a)(3)(B)(iii).

Here, Mr. Mertz should be appointed as lead plaintiff because: (1) he timely filed for appointment as lead plaintiff; (2) to the best of his knowledge, Mr. Mertz has the largest financial interest in this litigation; and (3) he will adequately represent the interests of the class. *See id.*; *see also*, *infra* Section III. Additionally, Mr. Mertz has retained experienced and competent counsel to represent the class. As the "most adequate plaintiff," Mr. Mertz's selection of Robbins Umeda to serve as lead counsel and Gordon Law as liaison counsel for the class should be approved. *See* 15 U.S.C. §78u-4 (a)(3)(B)(v).

## II. STATEMENT OF FACTS

AEHI is a Nevada corporation with its principal place of business in Eagle, Idaho. The Company is a development stage enterprise engaged in purchasing, optimizing, and constructing

green energy sources. AEHI's purported primary initiative is the construction of a proposed nuclear power plant in Payette County, Idaho.

Defendant Donald L. Gillispie ("Gillispie") founded AEHI in 2001. In September 20, 2006, the Company went public through a reverse merger with Nussentials Holdings, Inc. Soon after taking the Company public, defendant Gillispie hired stock promoters to find potential investors in AEHI, and, most importantly, to manipulate the Company's stock price by purchasing the AEHI stock at the end of certain trading days. In exchange, defendant Gillispie offered these promoters stockholdings in the Company.

Throughout the Class Period, defendants continuously made material false and misleading statements that wrongfully induced investors to purchase stock at an artificially inflated and manipulated price. Since the Company went public in 2006, defendants have used its stock promoters and series of press releases in their scheme manipulate the price of AEHI stock and trading volume. AEHI has issued over 160 press releases describing its purported financial results, despite the fact that the Company has failed to generate any revenue or any meaningful operations during that period. Defendants also made false and misleading statements regarding their sale of personally-held Company stock. For example, on September 7, 2010, AEHI issued a press release stating that "company directors and line officers have maintained their stock ownership [in AEHI and] no shares have been sold since [the] company['s] inception." On September 30, 2010, AEHI issued another press release where defendant Gillispie was quoted making substantially similar statements, stating, "[r]ecent insider purchases and the fact that neither I, our CFO, board members, nor any officers who have day-to-day line responsibilities for running the company have sold a single share since the Company's inception speak to our strong confidence in the outlook for the business." The above statements were false and misleading because AEHI's Senior Vice-President of Administration and Secretary, defendant Jennifer Ransom ("Ransom"), sold one million shares of the Company's stock between June and September 2010, obtaining proceeds of approximately $675,326. Further, defendant

Ransom failed to disclose her sales of AEHI stock in any SEC Forms 3, 4, or 5, as required under SEC regulations, effectively concealing her insider transactions.

The September 7 and 30, 2010 press releases were also false and misleading because defendant Gillispie directed the sale of AEHI stock held in defendant Ransom's and AEHI counsel Brian L. Webb's ("Webb") names. Defendant Gillispie carried out his illicit transactions using a broker who managed the brokerage accounts for Webb, and defendants Gillispie and Ransom. As detailed above, Gillispie directed the sale of one million shares of defendant Ransom's stock between June and September 2010. Further, in 2010, defendant Gillispie orchestrated the sale of at least 137,000 shares of AEHI stock owned under Webb's name. Defendant Gillispie concealed his insider transactions by trading under the cloak of transactions made under Webb and defendant Ransom's names, and by failing to file any SEC Forms 3, 4, or 5 disclosing the insider sales as required under Rule 16a-3 of the Exchange Act. At least $200,000 of defendant Ransom's proceeds from her insider sales was transferred to a bank account of Energy Executive Consulting, LLC ("Energy Executive"), defendant Gillispie's limited liability company, which he regularly used for personal expenses.

Further, defendants made false and misleading statements concerning defendant Gillispie's compensation. In the Company's Form 10-K for the fiscal year ended December 31, 2009, signed and certified by defendant Gillispie, it states that defendant Gillispie's compensation for 2009 was $133,000. Defendant Gillispie actually received $188,000 in compensation in 2009, approximately 30% greater than what was publicly disclosed. Further, defendant Gillispie received an increase in salary and additional compensation in Fiscal 2010 that AEHI never disclosed in subsequent public filings. In particular, defendant Gillispie received a salary increase of $40,000 a month beginning on July 1, 2010, leading to an aggregate increase in compensation of $306,500 in 2010. After accounting for an additional $267,359 of investor money transferred to Energy Executive, and $200,000 in net proceeds from the sale of defendant Ransom's stock, defendant Gillispie received a total of at least $773,859 in cash compensation in 2010.

AEHI continued to issue false and misleading press releases leading up to its eventual downfall when the SEC suspended trading of the Company's stock. On October 14, 2010, AEHI issued a press release announcing that Pinnacle Digest, an online financial newsletter, published an article that "vetted" and "recommended" AEHI stock. In the press release, AEHI falsely stated that "Pinnacle Digest was not paid or compensated by AEHI in any way for writing the article." In fact, as Pinnacle Digest admitted on its own website, AEHI paid Pinnacle Digest a fee to disseminate its news on Pinnacle Digest's website.

On December 14, 2010, the SEC issued an emergency order to suspend trading of AEHI securities. Thereafter, on December 16, 2010, the SEC filed a civil complaint against defendants AEHI, Gillispie, and Ransom alleging violations of section 10(b), 13(a), 16(a), and 17(a) of the Exchange Act, for the misconduct detailed above. On February 25, 2011, defendants filed their Answer to the SEC Complaint.

### III. ARGUMENT

#### A. Mr. Mertz Satisfies the PSLRA's Requirements and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure that governs the appointment of a lead plaintiff in a private action arising under the Exchange Act that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4 (a)(I)-(3)(B)(i).

First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of the following: (i) the pendency of the action; (ii) the claims asserted therein; (iii) the purported class period; and (iv) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice. 15 U.S.C. §78u-4 (a)(3)(A)(i). Here, the relevant notice was published on Globe Newswire on January 7, 2011. *See* Press Release, Rosen Law Firm, Investor Notice: The Rosen Law Firm Files Class Action on Behalf of Alternate Energy Holdings, Inc. Shareholders (Jan. 7, 2011) attached as Exhibit A to the Declaration of Philip H. Gordon in Support of Richard Mertz's

Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Gordon Decl.").

Second, within sixty days after publication of the notice, any "person" or "group of persons" who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §78u-4 (a)(3)(A)-(B).

Third, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4 (a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this act is:

> the person or group of persons that-
>
> (aa) has either filed the complaint or made a motion in response to a notice ... ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").

15 U.S.C. §78u-4 (a)(3)(B)(iii).

### 1. Mr. Mertz Has Timely Moved for Appointment as Lead Plaintiff

All class members who are interested in moving for the appointment of lead plaintiff in this matter must do so by March 8, 2011. *See* 15 U.S.C. §78u-4 (a)(3)(A)-(B). Pursuant to the provisions of the PSLRA and within the requisite time frame following the publication of the requisite notice, Mr. Mertz hereby moves this Court for appointment as lead plaintiff on behalf of all members of the class. Mr. Mertz has also duly signed and filed a certification stating his willingness to serve as a representative party, and lead plaintiff, on behalf of the class. *See*

Certification of Plaintiff Pursuant to Federal Securities Law, Richard Mertz (Mar. 7, 2011) attached as Exhibit B to Gordon Decl.

### 2. Mr. Mertz Has the Requisite Financial Interest in the Relief Sought by the Class

Pursuant to 15 U.S.C. §78u-4 (a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant or movants who have the largest financial interest in the class action. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

During the Class Period, Mr. Mertz suffered losses of $32,630 based on his Class Period purchases of AEHI stock. To the best of Mr. Mertz's knowledge, his financial interest in this matter is the largest of any competing lead plaintiff movant. Accordingly, Mr. Mertz should be appointed lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B).

### 3. Mr. Mertz Satisfies the Requirements of Rule 23

According to 15 U.S.C. §78u-4 (a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the court focuses primarily on the typicality and adequacy of representation requirements, and only a preliminary showing is necessary. *See Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 532 (N.D. Cal. 2009); *see also Cavanaugh*, 306 F.3d at 730.

### a. Typicality

In determining whether a movant presents claims or defenses typical of those of the class, the court looks to see "whether 'other members have the same or similar injury, whether the action is based on conduct which is not unique to the [movant], and whether other class members have been injured by the same course of conduct.'" *Hodges*, 263 F.R.D. at 532 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). When conducting a typicality analysis, the court directs its attention to the nature of the claim or defense of the movant, rather than the specific facts from which the cause of action arose. *See Hanon*, 976 F.2d at 508.

Mr. Mertz satisfies the typicality requirement of Rule 23. Like the other class members, Mr. Mertz: (1) purchased AEHI securities during the Class Period at artificially inflated prices; and (2) suffered damages thereby. Moreover, Mr. Mertz claims are premised on the same legal theories and arise from the same misconduct and course of events as alleged by the class. Finally, the injury incurred by Mr. Mertz resembles that incurred by similarly situated class members who traded the Company's securities relying on defendants' false and misleading statements and material omissions.

### b. Adequacy

A lead plaintiff must also fairly and adequately protect the interests of the class. *See Hodges*, 263 F.R.D. at 532; *Cavanaugh*, 306 F.3d at 730. When considering adequacy, courts consider the following two questions: "'(1) do the [movants] and their counsel have any conflicts of interest with other class members and (2) will the [movants] and their counsel prosecute the action vigorously on behalf of the class?'" *Hodges*, 263 F.R.D. at 532 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Here, Mr. Mertz is an adequate lead plaintiff because his interest in aggressively pursuing the claims against defendants is aligned with the interests of the members of the class who were similarly harmed as a result of

defendants' false and misleading statements. There is no antagonism between Mr. Mertz's interests and those of the other members of the class and there is nothing to indicate that Mr. Mertz will do anything but vigorously pursue the claims on behalf of the class. Lastly, as demonstrated below, Mr. Mertz's proposed counsel are qualified, experienced, and able to conduct this complex litigation in an efficient, effective, and professional manner.

Accordingly, Mr. Mertz satisfies Rule 23's typicality and adequacy requirements for the purposes of this Motion.

### B. Mr. Mertz's Selection of Lead and Liaison Counsel Should Be Approved

Pursuant to 15 U.S.C. §78u-4 (a)(3)(B)(v), the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class it seeks to represent. In that regard, Mr. Mertz, as the presumptively most adequate plaintiff, has selected Robbins Umeda to serve as lead counsel for the class. Robbins Umeda possesses substantial shareholder litigation experience, including the successful prosecution of securities fraud class actions on behalf of injured investors. *See* firm resume of Robbins Umeda LLP attached as Exhibit C to Gordon Decl. Gordon Law has served as liaison counsel in previous securities and complex class actions, and is capable of doing so here. *See* firm resume of Gordon Law Offices attached as Exhibit D to Gordon Decl. As such, the Court should approve Mr. Mertz's selection of Robbins Umeda as lead counsel and Gordon Law as liaison counsel for the class.

### IV. CONCLUSION

For the foregoing reasons, the Court should appoint Mr. Mertz as lead plaintiff and approve his selection of Robbins Umeda as lead counsel and Gordon Law as liaison counsel for the class.

Dated: March 8, 2011              GORDON LAW OFFICES
                                  PHILIP H. GORDON
                                  BRUCE S. BISTLINE

                                          s/Philip H. Gordon
                                  _____
                                  Philip H. Gordon, ISBN 1996

pgordon@gordonlawoffices.com
Bruce S. Bistline, ISBN 1988
bbistline@gordonlawoffices.com
623 W. Hays Street
Boise, ID 83702
Telephone: (208) 345-7100
Facsimile: (208) 345-0050

*[Proposed] Liaison Counsel for Plaintiff*

ROBBINS UMEDA LLP
Marc M. Umeda
mumeda@robbinsumeda.com
Gregory E. Del Gaizo
gdelgaizo@robbinsumeda.com
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

*[Proposed] Lead Counsel for Plaintiff*

574959